Porter
*v.*
Seeley.

PORTER *against* SEELEY.

*A,* being the payee and holder of a promissory note not negotiable, against *B,* assigned it, for a valuable consideration, to *C,* who put it in suit, in the name of *A,* and obtained judgment against *B.* The execution issued on this judgment was levied on *B's* land, which was set off, in satisfaction of such execution, to *A.* *A* then gave to *C* a power to sue in his (*A's*) name, at his (*C's*) own risk and expense, and to get possession of the land so set off. *C* afterwards brought ejectment, in the name of *A,* against *B,* for such land ; and during the pendency of the suit, *A* gave, under his hand and seal, a discharge of it, and an order for its discontinuance, professedly grounded on the refusal of *C* to indemnify *A* against the costs. This instrument *B* produced in court, and thereupon moved for the discontinuance of the suit. The court overruled the motion, and ordered the cause to proceed ; after which, it was tried upon its merits, and the plaintiff obtained a verdict. On a motion for a new trial, by the defendant, it was held, 1. that as *A* no longer needed protection against costs, this was not a ground for setting aside the verdict ; 2. that the decision of the court was, at the time, correct; the case being within the equity of the statute of 1822, for the protection of assignees of *choses in action.*

The plaintiff in such action, claiming title, by the levy of his execution against the defendant, to prove the title of the defendant, at the time of the levy, exhibited a chain of conveyances originating from *D.* The defendant then offered to prove, that *D* derived his title from *E,* and that *E,* before his deed to *D,* had given a mortgage of the premises to *F,* with covenants of seisin, which was still outstanding. This evidence, on the objection of the plaintiff, the court excluded. It was held, 1. that it was competent to the defendant to shew want of title in the plaintiff, without claiming title in himself ; 2. that the former judgment against the defendant, and the levy of the execution on the land taken as his, did not constitute an estoppel, precluding him from denying, in this suit, that he had a title, at the time of the levy ; but 3. that a prior outstanding title in a mortgagee was not inconsistent with a legal title in the plaintiff; and consequently, the evidence in question was, on this ground, properly excluded.

THIS was an action of ejectment; tried at *New-Haven,* January term, 1840, before *Church,* J.

On the trial, it was admitted, that the plaintiff had formerly assigned to *Sherman Bronson,* two promissory notes against the defendant, which *Bronson* sued in the plaintiff's name, and recovered judgments, and obtained executions thereon, which were levied on the defendant's interest in the premises ; and this action of ejectment was brought to recover possession of the premises so levied upon, pursuant to a written authority from the plaintiff, in these words : " *Waterbury, November* 15th, 1837. This may certify, that I have here-

*New-Haven,*
*July, 1840.*

Porter
*v.*
Seeley.

tofore sold and delivered to *Sherman Bronson,* for a valuable consideration, two notes in my name against *William Seeley,* which have been satisfied, by appraisal of land ; and I do authorize said *Bronson* to pursue, in my name, to satisfaction, at his own risk and expense, to get possession of said land.

                                    *Joseph Porter,* Jr."

Before proceeding to the trial of this cause, the defendant produced and read to the court, the following instrument, signed and sealed by the plaintiff : " *Waterbury, October* 16th, 1839.   Whereas there is a suit now pending before the superior court for *New-Haven* county, in my name, against *William Seeley,* being an action of ejectment, which was instituted by *Sherman Bronson,* (as I am informed) and is by him carried on, contrary to my wishes ; and as he refuses to indemnify me against the costs that may be recovered, by the defendant, in said suit ; this is, therefore, to discharge said suit, and order it to be discontinued.   In testimony whereof, I have signed and sealed this instrument, the day and year aforesaid.        *Joseph Porter,* Jr." [L. S.]

The defendant then moved the court, that this suit, being the same mentioned in such instrument, should be discontinued, and the defendant be permitted to go thereof, without further hindrance or detention therefrom.   The court refused to permit the cause to be discontinued, and ordered the trial to proceed.

In the progress of the trial, the plaintiff, to prove his title and right to recover, introduced two executions in favour of *Joseph Porter,* Jr., the plaintiff, levied on the 9th of *October,* 1837, upon all the interest of the defendant in the premises ; also a warranty deed of the premises from *Daniel Finch* to *Silas Grilley,* dated *April* 21st, 1834 ; a warranty deed of the premises from said *Silas Grilley* to *William Seeley,* dated *January* 16th, 1837 ; a lease of the premises from *William Seeley* to *Patty Seeley,* for her life, dated *January* 16th, 1837 ; accompanied with proof, that the defendant, with his wife, *Patty Seeley,* took possession under such lease, claiming title to the premises, by virtue thereof, and were in possession, at the time of bringing this suit.   The plaintiff here rested his case.

The defendant then offered to prove an outstanding title of the premises in one *Enoch W. Frost;* and for that pur-

*New-Haven,*
*July, 1840.*

Porter
*v.*
Seeley.

pose, offered in evidence, a mortgage deed of the premises, with the usual covenants of seisin and warranty, dated *August* 10th, 1831, to said *Frost* from the then owner, *Milton Hotchkiss,* which mortgage deed was prior in date to another deed, which *Milton Hotchkiss* had given, under which latter deed, *Daniel Finch* had claimed to derive his title.

To the admission of such mortgage deed, the plaintiff objected ; and the court, sustaining the objection, would not allow it to be given in evidence.

There being no further evidence in the cause, the jury returned a verdict for the plaintiff. The defendant moved for a new trial, for error in over-ruling his motion, and rejecting the evidence offered by him.

*R. I. Ingersoll,* in support of the motion, contended, 1. That the plaintiff on the record ought to have been permitted, by the court, to controul the suit. *Bulkley* & al. v. *Landon* & al., 3 *Conn. Rep.* 36. *Plant* v. *McEwen,* 4 *Conn. Rep.* 544. 548. In the case of *Johnson* v. *Blackman,* 11 *Conn. Rep.* 348., the court recognized the doctrine, that so long as the plaintiffs are plaintiffs on the record, they must be taken to be so *in all their consequences.* It may be said, however, that the act of 1822 (*Stat.* 61. ed. 1835.) excepts this case from the general rule. But that act is, in its terms, expressly confined to " any suit upon a bond, note, or other *chose in action* not negotiable." This is not such a suit : it is an action of ejectment.

2. That the written authority which *Bronson* had from the plaintiff on the record, to get possession of the land, was *conditional :* the proceedings were to be " at his own risk and expense." *Bronson* was not only to defray the present expenses of the litigation, but he was to protect the plaintiff against all " risk." When *Bronson,* therefore, refused to indemnify the plaintiff on the record against the risk of costs, that might be recovered by the defendant in the suit, the plaintiff had a right to step in, and refuse the use of his name any longer, as a party to that suit.

3. That the defendant ought to have been permitted to shew the outstanding title. There is no principle better settled, than that the plaintiff in ejectment must recover on the strength of his own title, and not upon the weakness of the

defendants. Possession gives a right against any one, who cannot shew a good title. *Roe* d. *Huldane* & al. v. *Harvey*, 4 *Burr*. 2484. 2487. *Bul. N. P.* 110. *Roscoe* 151. 1 *Sw. Dig.* 507, 8, 9. There is no decision in this state, which conflicts with this doctrine, unless it be the case of *Yeomans* v. *Phelps*, 2 *Day* 227.; but the decision of that case is repudiated, by Judge *Swift*, and by this court. 1 *Sw. Dig.* 509. *Chatham* v. *Brainerd*, 11 *Conn. Rep.* 181.

*New-Haven,*
*July, 1840.*

Porter
*v.*
Seeley.

*Baldwin*, contra, contended, 1. That the court properly refused to permit *Porter*, the assignor of the debts on which the judgments were recovered, which were satisfied by levy on the land in controversy, to interfere with the suit, against his written permission to the assignee to pursue it. The statute of 1822, for the protection of the assignee of a *chose in action*, was intended to prevent the interference of the nominal plaintiff, in cases like this. A right of action for a disseisin is a *chose in action*, as much so as a right of action on a note. *Jac. Law Dict.* verb. *Chose in action.*

2. That the evidence offered, on the trial, of an outstanding title in *Frost*, as mortgagee of *Milton Hotchkiss*, was properly rejected. The defendant entered, claiming title in right of his wife, as lessee for life of *William Seeley*, who held under a warranty deed from *Milton Hotchkiss*. All the defendant's title was acquired for a full consideration, by the levy of the plaintiff's executions, as fully as if the defendant had conveyed it, by deed ; and there could be no more equity or justice, in permitting him to set up an outstanding title, in the one case than in the other.

The rule relied on by the defendant, applies only to cases where no privity of estate exists between the plaintiff and defendant. Where such privity exists, whether as landlord and tenant, grantor and grantee, or levying creditor and debtor, the plaintiff may always recover, on proof of his possessory title, as against the defendant; and the latter will not be permitted to set up an outstanding title in another. *Leigh's N. P.* 421. *Jackson* d. *Klein* v. *Graham*, 3 *Caines'* 188. In *Jackson* d. *Masten* v. *Bush*, 10 *Johns. Rep.* 223., it is said, by the court, the rule excluding a defendant, against whom there has been a judgment in execution, from defeating the purchaser's recovery of his possession, is founded in justice

*New-Haven,*
*July, 1840.*

Porter
*v.*
Seeley.

and policy. See, also, 2 *Wend.* 14. *Varnum* v. *Abbott* & al., 12 *Mass. Rep.* 474. In *Jackson* d. *Hill* v. *Streeter*, 5 *Cow.* 530., it is said, "Where it appears, that the defendant in ejectment entered under a title derived from *A*, under which title also the plaintiff claims, the defendant will not be permitted to dispute the validity of that title under which he entered, by setting up an older and outstanding title in a third person."

SHERMAN, J. The motion for new trial, made by the defendant, presents two decisions of the superior court for our consideration.

The title of the plaintiff accrued upon the levy of two executions, issued on judgments obtained in his name against two defendants, upon notes of hand which were not negotiable, but had been previously assigned to *Sherman Bronson*, by whom they were put in suit, and these judgments obtained. The nominal plaintiff had no interest whatever in the land, except that the writs, *pro forma*, were prosecuted to final judgment, and executions obtained and levied, in his name. On the 15th of *November*, 1837, after these levies were made, he gave to *Sherman Bronson*, who is the real plaintiff in the cause, a power "to sue in his (the plaintiff's) name, at his own risk and expense, and to get possession of the land." But before proceeding to the trial of the action, the defendant produced a discharge of the suit, and an order for discontinuance, under the hand and seal of the plaintiff, professedly grounded on the refusal of *Bronson* to indemnify him against the costs which might be recovered, by the defendant, if the plaintiff should fail in the action. Upon this, the defendant moved, that the suit should be discontinued. This motion was over-ruled by the court, who ordered the trial to proceed.

It is now very obvious, that as the plaintiff has prevailed on the trial, he no longer needs the protection which he sought in directing the discontinuance. And, as the defendant has had all he could ask on his own account—a full and fair trial of the cause upon its merits—there seems to be no just reason for granting a new trial upon this ground.

But the decision of the court, at the time, was correctly made. Formerly, in this state, no notice was taken in a

court of law, of the equitable rights of an assignee of a *chose in action* not negotiable, in the suit to recover the debt ; and the receipt, admission or other act of the nominal plaintiff was regarded in the same manner as if he were vested with the beneficial interest, as well as the legal title. The party aggrieved was driven to his action for damages, or to a court of equity, for redress. *Bulkley* v. *Landon*, 3 *Conn. Rep.* 76. But in any other action, the rights of the assignee would be noticed and enforced. *Colburn* v. *Rossiter*, 2 *Conn. Rep.* 503. It would have been better, had the wrongful act been regarded as utterly unavailing in a court of law, as it was in a court of equity, in conformity with the practice in *England*, and in some of our sister states. *Andrews* v. *Baker*, 1 *Johns. Cas.* 441. *Littlefield* v. *Story*, 3 *Johns. Rep.* 425. *Wardell* v. *Eden*, 1 *Johns. Rep.* 532. *James* v. *Witter*, 12 *Mass. Rep.* 304. *Payne* v. *Rogers*, *Doug.* 407. *Legh* v. *Legh*, 1 *Bos. & Pul.* 447. The measures for remuneration were dilatory and expensive, and from the bankruptcy of the party, his residence abroad, or other causes, were frequently useless. The most gross injustice was often inflicted, without the possibility of redress. The spirit of the decisions in *Bauerman* v. *Radenius*, 7 *Term Rep.* 663., and *Craib* v. *D'Aeth, Id.* 669. n., was followed by our courts. When a release from a nominal plaintiff was pleaded, the assignee was left to his action at law, or bill in equity, for redress. *Bacon* v. *Norton*, 5 *Day* 128. To correct this practice, the statute of 1822 was passed, which enacts, " that whenever the defendant in any suit upon a bond, note or other *chose in action* not negotiable, shall plead or give in evidence the discharge, admission or other act of the plaintiff, or any payment made to him, or transaction whatsoever, between the plaintiff and defendant, it shall be lawful for the plaintiff to reply or prove, as the case may require, an assignment of such *chose in action*, and notice thereof given to the defendant ; and on the same being made to appear, such discharge, &c., shall be no otherwise available, than the same would or ought to be in a court of equity." *Stat.* 61. (ed. 1835.) Under the operation of this act, it cannot be contended, that the defendant could defeat a suit on the notes, in the name of *Porter*, by pleading a discharge obtained after notice of the assignment. As this land has been applied in payment of a debt, which the statute intended to put beyond

the power or controul of the promisee, the present suit is clearly within its equity. By the act, the equitable right of the assignee, in the notes, is made available in a court of law against any release or transaction whatsoever between the plaintiff and defendant. But this protection would be vain, if the assignor could discharge the judgment, or in any way prevent the collection, of the debt. To tolerate such interference, would be to inflict the very injury which the statute was intended to prevent.

2. The plaintiff derived his title to the demanded premises, by the levy of two executions against the defendant ; and, in order to prove that the defendant had a title, at the time of the levy, he exhibited a chain of conveyances originating from one *Daniel Finch.* The defendant then offered to prove, that *Finch* derived his title from *Milton Hotchkiss ;* and that the latter, in *August,* 1831, before his deed to *Finch,* had given a mortgage of the premises to *E. W. Frost,* with covenants of seisin, which was still outstanding. To this evidence, the plaintiff objected ; and it was excluded, by the court.

In deciding upon the validity of this objection to the outstanding mortgage, we do not adopt the opinion of the supreme court of errors, in the case of *Phelps* v. *Yeomans,* 2 *Day,* 227., that the defendant in ejectment, if he has no title, shall not shew that the plaintiff has none. In that case, the maxim, *melior est conditio possidentis,* seems to have been disregarded. The person from whom the plaintiff derived title, had sold all his interest in the premises before giving the deed under which the plaintiff claimed. The court, nevertheless, affirmed a judgment in the plaintiff's favour. He had no title ; nor does it appear, that he ever had possession. To him, then, the defendant, by his entry merely, could have done " no wrong or disseisin." It is difficult to see how a man, who has conveyed away his title, can confer a better one than a mere stranger. Upon the principle on which the plaintiff recovered, the defendant, by afterwards taking a deed from some person who had no pretence or title, might recover the land back again from the plaintiff. That decision was made, by a divided court, and has never been satisfactory to the bar. Three of the professional gentlemen on the bench, one of whom was afterwards chief justice of the state, were opposed to it. The late Ch. J. *Swift* denies its authority ;

(1 *Dig.* 309.) and it was shaken, if not destroyed, by this court, in *Chatham* v. *Brainard*, 11 *Conn. Rep.* 81.

*New-Haven,*
July, 1840.

Porter
*v.*
Seeley.

Nor do we proceed upon the ground, that a judgment and levy of an execution on land constitute an estoppel, which precludes the debtor from denying that he had a title at the time of the levy, and that the plaintiff acquired any. Such a process, if regular, divests the debtor of whatever title he has, and vests it in his creditor ; but it conveys to the creditor nothing but the debtor's interest. As to that, it is, indeed, justly deemed conclusive ; for it operates *in rem.* But if the land of the father is taken for the debt of the son, the latter will not be estopped from afterwards claiming his inheritance, whether he was, or was not, in possession, at the time of the levy. The supreme court of *Massachusetts*, in *Varnum* v. *Abbott*, 12 *Mass. Rep.* 426., when speaking of the alienation of a tenant in common of a part of the premises, by metes and bounds, do, indeed, say : " We see no difference, in this respect, between a conveyance by deed, and by the levy or extent of an execution. The former owner is *estopped*, by the record of a judgment against him, and of the execution and return of it, as effectually as he would be, by a deed under his own seal." The " owner," undoubtedly, is as effectually divested of his title, in a tenancy in common in the state of *Massachusetts*, by a levy on a part of the estate, by metes and bounds, as by a deed of the land bounded in the same manner ; although such levy, in this state, is held to be void ; and if all that is meant, is, that a levy has the same effect as a deed of release, in transferring the " *owner's*" title, and preventing his reclaiming it, the opinion is correct. The case called for no more; and, probably, nothing more was intended. But that a judgment and levy are an *estoppel*, in the technical sense of that word, and, as such, have the same operation as a deed with covenants, is not a sustainable proposition. An estoppel not only prevents the " *owner*" from reclaiming his estate, but one who was not the owner, from denying that he had a title, at the time of the levy. If, in his deed, he covenants, or even states as a fact, that he has a good title, he can never be admitted to prove the contrary. To shew the truth, would contradict what he has solemnly admitted under seal. A judgment estops the parties from denying what appears on the record to be found or decided. But the record contains nothing about the title of the land on which

the levy is afterwards made. The proceedings of the officer are *in invitum,* and import no assent of the debtor. What right he has, is taken, and cannot be reclaimed ; but that he had any, may be denied. Neither debtor nor creditor is concluded. If the debtor has no title, the creditor, on a *scire facias,* may aver the fact, and disaffirm the levy. The cases cited by the plaintiff from the state of *New-York,* are inapplicable here. They there proceed in appropriating the land in payment of the debt, under a system which is not adopted in this state. If their rules, as to the effect of a deed given under a sheriff's sale, seem to vary from those of the common law, they cannot affect the principles on which our rules of evidence are founded.

The question, then, whether the evidence offered in this case to disprove title in the plaintiff was admissible, must depend on other considerations. The testimony offered, was a prior outstanding title in a mortgagee. Whether the mortgage was satisfied, does not appear ; nor is it at all material.

The nature of the estate granted by a mortgage deed, is not to be ascertained from its language. It purports to be an estate on condition, to become absolute upon non-performance. Apparently, the whole estate is transferred to the mortgagee ; and the mortgagor can have nothing until reinvested with his original title, by performance of the conditions. When the day of redemption is passed, the right of the mortgagor is gone forever, according to the literal and plain import of the instrument, whatever may be its value in proportion to the debt or duty it was given to secure. Even then, the debt is not paid. The condition imposes a penalty, by which the mortgagor is forever divested of his interest. But its severity is mitigated, by the principles of equity. By those principles, a species of security is made subservient to the interest of credit and commerce, which, by strict law, would be an engine of oppression, which no community could endure. The grand principle, by which equity accomplishes this important end, is, that the mortgage shall be used for no purpose whatever but *mere security.* No advantage shall be taken of the breach of the condition; and the mortgagor shall not be barred, except where lapse of time, in analogy to the law of limitations, shall be deemed evidence of an

actual transfer of title, independently of the forfeiture. The
mortgagee may use his security to enforce payment, but for
no other purpose. Even after forfeiture is incurred, and pos-
session taken, the mortgagor is considered as the sole pro-
prietor, and may compel the mortgagee to account to him for
the rents and profits, by applying them towards the payment
of the debt, and to relinquish his lien, when that end is ac-
complished. In a word, in the eye of equity, the mortgagor
is the sole owner of the property, as well after forfeiture, as
before the execution of the deed ; and the mortgagee has
rather a power than an interest, the use of which is strictly
limited to the collection of the debt, or enforcement of the
duty, which the mortgage was intended to secure.

But, for a long time after these salutary principles were
adopted in courts of equity, courts of law adhered to the
strict and legal construction of the language of the deed.
Finally, however, but with laudable caution, they have admit-
ted those principles into their own administration of justice,
as far as their established forms would permit. Injunctions,
redemptions and foreclosures, they could not grant ; but they
could judicially take notice of the principles which equity
had sanctioned, and abstain from their violation.

As the question regarding the admissibility of a mortgage
deed, as evidence for the purposes for which it was here
offered, has not been very definitely presented to the courts
of law in this state, it is proper to advert to some of the lead-
ing cases, to shew to what extent those courts have elsewhere
departed from their former practice, and adopted the rules of
equity.

In an anonymous case in the *King's Bench*, in 1721, the
court ordered a plaintiff in ejectment to shew cause why,
on payment to the lessor, or bringing into court, principal,
interest and costs, proceedings should not be stayed. This
was said to be often done in the *Common Pleas.* 1 *Stra.*
413. It was not by virtue of any statute ; for the 7 *Geo.* 2.
*ch.* 20., authorizing the court, in such a case, to discharge
the mortgagor, and compel the mortgagee to release, was
not passed until thirteen years afterwards. *Blackstone* says,
(*vol.* 3. *p.* 425.) " the payment of principal, interest and costs,
ought, at any time, before judgment executed, to have saved
the forfeiture in a court of law, as well as in a court of

equity." In *Richards* v. *Sims*, 2 *Barnardiston's Ch. Rep.* 90., in 1741, Lord *Hardwicke* said, that courts of law considered mortgages as a mere security; and that a discharge of the debt, even by parol, was a discharge of the mortgage, *so that ejectment would not lie on a satisfied mortgage.* " The debt is principal, and the land is an accident only." In *Martin* v. *Mowlin,* 2 *Burr.* 969., a mortgagee of a copy-hold estate had surrendered it to the use of his will. By his will he gave all his real estate to his son in tail, and also gave him his personal estate. He had been long in possession of the mortgaged premises; and it was not expected they would ever be redeemed. The question arose whether his son took the title to these lands by the demise in tail, or by the gift of the personal estate. Lord *Mansfield,* in giving the opinion of the court of *King's Bench,* says: " A mortgage is a charge upon the land, and whatever would give the money, would carry the estate along with it, to every purpose. The estate in the land is the *same thing* as the money due upon it. It will pass by a will not made and executed with the solemnities required by the statute of frauds. The assignment of the debt, or forgiving it, will draw the land after it, as a consequence." We would not be understood to say, that, on a mere assignment of the debt, the assignee could maintain ejectment for the land, notwithstanding our statutes regulating the alienation and recording of titles; but we cite this opinion to shew, that, at common law, the mortgage is now considered merely as a security, and cannot be enforced for any other purpose. The same eminent judge, in the case of *The King* v. *St. Michael, Doug.* 632., says: " The mortgagor in possession gains a settlement, because the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only security. It is an affront to common sense to say, the mortgagor is not the real owner." In *The King* v. *The inhabitants of Edenton,* 1 *East,* 288., where a similar question arose, Lord *Kenyon* repeats the opinion of Lord *Mansfield* with approbation. In *Matthews* v. *Walwyn,* 4 *Ves.* 128., the lord chancellor says, that the mortgage is a mere security of which the debt is the principal; and when the mortgage is assigned, it is only the assignment of a debt collaterally secured. In *Petty* v. *Clarke,* 5 *Peter's Rep.* 483., it is said, by Ch. J. *Marshall,* in giving the opinion of the

*New-Haven,*
July, 1840.

Porter
*v.*
Seeley.

supreme court of the *United States*, that although the legal title is not released, a court of law will not permit the mortgagee himself to set up an outstanding satisfied mortgage against the mortgagor ; and that this rule is founded on an equitable controul exercised by courts of law over parties in ejectment. The mortgagee or his assignee may set up the legal title, if the debt is due, as it is necessary for his security.

The courts in the state of *New-York*, have adopted these principles, to their full extent. It was long ago held, in their court of errors, (1 *Caines' Cases in Error*, 69.) that " assigning the debt, or forgiving it, even by parol, draws the land after it." In *Jackson* d. *Norton* & al. v. *Willard*, 4 *Johns. Rep.* 42., Ch. J. *Kent*, upon the question whether the interest of a mortgagee can be taken and sold, by virtue of an execution, in giving the opinion of the court that such a sale would be void, because the mortgage cannot be separated from the debt, says : " We are constantly embarrassed between the force of technical formalities, and the real sense of the contract. The language of modern cases is tending to the same conclusions, which have been adopted in equity ; and, whenever the nature of the case would possibly admit, the courts of law have inclined to look upon a mortgage, not as an estate in fee, but as a mere security for a debt." " The real nature of a mortgage, in the equity sense of it, has been repeatedly recognized in the courts of law, since the time of Lord *Hardwicke*." In *Hitchcocke* v. *Harrington*, 6 *Johns. Rep.* 294., the same learned judge says : "It is now the settled law of this court, and the same principle has been recognized in the court for the correction of errors, that the mortgagor is to be deemed seised, notwithstanding the mortgage, as to all persons except the mortgagee and his representatives. When his interest is not in question, the mortgagor, before foreclosure, or entry under the mortgage, is now considered, at law, as the owner of the land." In *Runyan* v. *Mersereau*, 11 *Johns. Rep.* 534., these doctrines are fully recognized. It is there held, that the mortgagor may maintain trespass against the mortgagee. The mortgage was not satisfied. The defendant pleaded *liberum tenementum*, but the court held, that the freehold was not in him, but in the plaintiff, the mortgagor. In *Jackson* v. *Bronson*, 19'

*Johns. Rep.* 325., where the defendant had a deed in fee from the mortgagee, without an assignment of the debt, it was held, that he could not defend himself against the mortgagor in an action of ejectment. The mortgage was unsatisfied, and in force, but was no bar to the action. These principles were all recognized and adopted, in the court for the correction of errors. 2 *Cowen* 231.

In the present case, the attempt to bar the action by the title of the mortgagee, is made by a stranger, who has no interest whatever in the debt or land.

The opinion of the judge at the circuit was, undoubtedly, correct; and no new trial ought to be granted.

The other Judges were of the same opinion.

New trial not to be granted.