### ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT OF ERRORS

##### OF THE

# STATE OF CONNECTICUT.

~~~~~~~

### SMITH *against* VINCENT and others.

15 1
72 467

Where the question was, as to the validity of a promissory note, the consideration of which was claimed to be made up in part of a sum of money advanced by *A ;* the party assailing the note offered evidence to shew, that *A* was, at the time of the alleged advance, a poor man, unable to advance so much money; it was held, that such evidence was admissible.

Where the party insisting upon the validity of the note, for the purpose of repelling such evidence, and showing the value of *A's* estate and his pecuniary ability, at the time referred to, offered *A's* books of account, appearing to be regularly kept by him, containing his charges for professional services, and for diverse articles of personal property, such as are usually charged on book, sold by him ; it was held, that such entries, unaccompanied with any proof of the time when they were made, or of their fairness, or that they embraced credit as well as debt, or of any corroborating circumstance, were not admissible.

The admissions of a party defendant in an action of ejectment, who was a mere tenant of his co-defendants, claiming no other interest, made in their absence, are evidence in the cause, against such party, but not against any other defendant.

The title of a mortgagee, under a mortgage satisfied after forfeiture, may be set up as a defence to an action of ejectment.

But where a mortgagee under a satisfied mortgage, was precluded from such defence, by the charge of the court; and on a motion for a new trial, it did not appear, that the mortgage was satisfied after the day; it was held, that a new trial ought not to be granted.

THIS was an action of ejectment, brought by *Perry Smith*, Esq., against the individuals composing the firm of *G. I. Vinent & Co.* and *Frederick J. Fenn*, Esq.

The cause was tried at *Litchfield, August* term, 1841, before *Sherman*, J.

The plaintiff claimed title to the premises, by the levy of an execution in his favour, for the sum of 8144 dollars. The defendants claimed title, by the levy of an execution, in favour of all the defendants except *Fenn*, for the sum of 6999 dollars. The levies of both executions were in due form; and that of the defendants was subsequent to the plaintiff's; yet the suit in which the defendants obtained their execution, was commenced earlier than that of the plaintiff, by attachment of the premises. And it was admitted, that the title of the defendants was good and must prevail, unless rendered void by the facts about to be stated.

The judgment on which the defendants' execution issued, was in a suit upon a promissory note of the *Housatonic Iron Company*, for 6553 dollars, 33 cents, dated *April* 16th, 1838, signed by *Fenn*, as agent of that company, and payable to the defendants, (except *Fenn*) by the name of *G. I. Vincent & Co.*, on demand. The premises were the property of the *Housatonic Iron Company* before they were levied upon, subject to a certain mortgage, the validity of which was not admitted by the plaintiff.

The plaintiff claimed, that said note was given to defraud the creditors of the *Housatonic Iron Company*, and was therefore void in its inception; and also, that it had been paid, before judgment thereon, and hence the execution was fraudulent and void.

This was denied by the defendants, *G. I. Vincent & Co.*, who claimed to have proved, that the note was fairly made and delivered to them; that it was given in payment of a debt of 1728 dollars, 76 cents, due from the *Housatonic Iron Company* to *G. I. Vincent & Co.* for merchandise and money advanced; for a debt of 3538 dollars, 50 cents, from that company, to *Fenn*, for services rendered and money advanced, which claims they (*G. I. Vincent & Co.*) had purchased of *Fenn*, and paid him therefor, thus becoming the creditors of that company to this amount; and for the sum of 1285 dollars, 7 cents, which the company owed by note to one *Hawes*, which note *Hawes* had endorsed to *G. I. Vincent & Co.* As to this *Hawes* note, the defendants claimed to have proved, that when the note dated the 16th of *April*, was given to

them, they agreed with the *Housatonic Iron Company* to take up said *Hawes'* note, when it became due ; and that in *April*, 1839, before the rendition of said judgment, *G. I. Vincent & Co.* paid the same to said *Hawes.*

The plaintiff denied the existence of such debt of the *Housatonic Iron Company* to *Fenn*, and the assumption and payment of said debt to *Hawes* ; and claimed that the *Hawes* debt was included in the note of the 16th of *April*, to defraud the creditors of the *Housatonic Iron Company.* The defendants, on the other hand, claimed, that they acted honestly in the matter ; that the debts to *Fenn* and *Hawes* were honest ; and that, at all events, *G. I. Vincent & Co.* knew nothing to the contrary ; and that they could not be injured, if *Fenn's* claims were unfounded.

*G. I. Vincent & Co.* likewise claimed title to the premises, by a mortgage deed thereof, from the *Housatonic Iron Company*, formally executed by *Fenn*, as their agent, under a general power to make mortgages, duly recorded, bearing date the 4th of *May*, 1838 ; which was given to *G. I. Vincent & Co.* to secure the payment of said note of the 16th of *April.*

The plaintiff denied the legality of this mortgage, for the reasons already stated, and for the further reason, that so much of the mortgage debt as was made up of the debt originally due to *G. I. Vincent & Co.* and the *Hawes* debt, had been paid, by the *Housatonic Iron Company*, to *G. I. Vincent & Co.*, after the execution of said mortgage, and before said judgment, and that no part of the mortgage debt was now due and unpaid.

In order to prove that *Fenn* was not a creditor of the *Housatonic Iron Company*, as the defendants claimed, the plaintiff offered sundry witnesses, to prove, that for years previous to and down to the time when the charges of cash advanced were made, *Fenn* was a poor man, and unable to advance the sums so charged by him to the *Housatonic Iron Company.* To this testimony, the defendants objected, claiming that it was irrelevant, indefinite and too remote. The court, however, permitted it to go to the jury.

The defendants then offered in evidence, *Fenn's* books of account, by him, as they stated, duly and regularly kept, containing his charges for professional services as an attorney at

law, rendered to his clients, and for diverse articles of personal property of small value, such as are usually charged on book, as he sold and charged them from time to time, to show the value of *Fenn's* estate and pecuniary ability, during the period to which the plaintiff's inquiry related. The plaintiff objected to the admission of said books as evidence. This objection the court sustained, and rejected the evidence offered.

The plaintiff had, by bill in equity, obtained disclosures from each of the defendants severally, touching the various matters in controversy between them. These disclosures the plaintiff read to the jury, and then introduced to them sundry admissions of *Fenn*, made both before and after the execution of the note of the 16th of *April*, not in the presence of the other defendants, as to the extent of his professional business, and the amount of his property. *Fenn* did not, on the trial, claim any title in himself, but only that he was the tenant of the other defendants; and they did not deny that *Fenn* was their tenant, but defended in their own right, as being themselves the owners of the property in question. Upon this state of the case, the defendants objected to the admissions of *Fenn*, insisting that, let the merits of the case be what they might as to him, the plaintiff could not have a verdict, unless it should be proved, that the other defendants had no title; and hence the admissions and disclosures of *Fenn* were not material or admissible.

The defendants offered *Hawes* as a witness, who testified, that in *January*, 1839, when said note from the *Housatonic Iron Company* to him fell due, he called on *G. I. Vincent & Co.*, the indorsers, for payment; and they then offered to pay him, but as he then did not want the money, he requested them to keep it for him in their hands, to which they acceded; and that in the *April* following the month in which the judgment was rendered, they paid it to him. He did not state whether it was paid to him before or after said judgment. These facts were not denied by the plaintiff; nor in any way impugned by other testimony.

The plaintiff requested the court to instruct the jury, that if they should find that, at the time the judgment was rendered in favour of *G. I. Vincent & Co.* against the *Housatonic Iron Company*, the debt due from that company to *Hawes* had not been actually paid to him, by *G. I. Vincent & Co.*, said

judgment was void as against the plaintiff, though *G. I. Vincent & Co.* might, previously to the time they took judgment on said note of the 16th of *April*, have agreed with *Hawes* to pay the note to him, and at the time that they took that note, have absolutely engaged to the *Housatonic Iron Company*, to pay the debt to *Hawes;* inasmuch as until said note was actually paid to *Hawes*, or the *Housatonic Iron Company* was by him released, that company remained liable to pay it; and that the note originally held by *G. I. Vincent & Co.* for their indorsement, and the amount thereof, included in said mortgage note, was, although absolute in form, but a mere collateral security, to be resorted to, only in the event of actual payment of the *Hawes* debt, by *G. I. Vincent & Co.*

The defendants, on the other hand, insisted, that although at the time when said judgment was rendered, *G. I. Vincent & Co.* had not in fact paid the *Hawes* debt, nor made any new promise to him, yet if, as to the *Housatonic Iron Company, G. I. Vincent & Co.* had actually assumed to pay that debt, and honestly supposed it had become their own to pay, the note of the 16th of *April* would not be therefore void, nor the judgment thereon ineffectual, although *Hawes* had not released the *Housatonic Iron Company;* but that it would be good, and others might obtain relief, without destroying the entire judgment of *G. I. Vincent & Co.*

The defendants requested the court also to instruct the jury, that if they should find said mortgage note of *G. I. Vincent & Co.* legal and valid, at the time of its execution, and the mortgage given to secure it equally legal and valid, the payment of said note to *G. I. Vincent & Co.* subsequently to that period, would not, so long as the mortgage title was out-standing in *G. I. Vincent & Co.*, enable the plaintiff to recover; but that he must first get in the legal title from them.

The judge received the admissions and disclosures of *Fenn*, as evidence against him, but not against the other defendants; and in his charge to the jury, instructed them, that *Fenn's* admissions or declarations, made in the absence of the other defendants, were evidence against him, but not against any other defendant; and that no act of his, done without their knowledge, or consent, or connivance, would in any way

HARVARD LAW LIBRARY

affect their title; and that whether *Fenn* had conducted correctly or not, was of no moment, except so far as the other defendants had participated in the fraud; and that the jury should cautiously guard against any undue influence from this source.

Upon the other points in the case, the judge charged the jury as follows: " If you shall find, that *G. I. Vincent & Co.* had undertaken absolutely to pay the note to *Hawes,* in consideration of receiving this note and mortgage; or if you shall find there was no actual fraud, or any intention to delay or hinder the creditors of the *Housatonic Iron Company,* the including of this sum in the mortgage, (as about 2700 dollars of the note for which it was given is admitted to be justly due to them,) would not impair the legal title, which the mortgage deed purports to convey. And if, at the time the judgment was rendered, *G. I. Vincent & Co.* had absolutely assumed to pay the debt to *Hawes,* (as is contended by the defendants, and they have offered evidence to prove,) and when the note became due in *January,* 1839, offered to pay it to *Hawes,* pursuant to the understanding between them and the *Housatonic Iron Company,* and *Hawes* actually accepted that understandingly, and requested them to keep the money for him, to which they acceded, the judgment, in the absence of any *actual* fraud, would not be rendered invalid, as against the plaintiff, by reason of its including the amount of the *Hawes* note; but if so much of the note on which said judgment was rendered, as was given for the consideration of said note to *G. I. Vincent & Co.* on account of the *Hawes* debt, was by them held, at the time judgment was rendered, as a mere indemnity, to be resorted to, in case they should have to pay *Hawes;* and there was no such absolute undertaking by them to pay *Hawes;* then said judgment would be void. In this a judgment differs from a mortgage. The latter would vest a good title, in the absence of actual fraud, under the circumstances above stated in relation thereto; but a judgment under like circumstances, its amount being in part for a mere security, would be void as against the creditors of the debtor therein.

" It is further objected to said mortgage and judgment, that a debt of more than 3500 dollars, claimed by *Fenn* as due to him from the *Housatonic Iron Company,* and by him sold

and transferred to *G. I. Vincent & Co.*, and by agreement between him, as the agent of said company, and *G. I. Vincent & Co.*, indorsed on the note of said company to them, for which said mortgage was given and said judgment rendered, was fraudulently claimed by *Fenn.* It is for you to inquire and infer from the evidence, whether this claim of *Fenn* on said company, was fraudulent, or *bona fide.* If you find it justly due to him from said company, then said note on which said mortgage was given and said judgment rendered, cannot be thereby made invalid. But if you find it was a groundless and fraudulent claim, you will then enquire, whether it was sold by *Fenn* to *G. I. Vincent & Co.*, under circumstances which would justly render it, in their view, a fair and honest claim, without reasonable ground of doubt or suspicion of its justice ; or if you find that they bought it honestly, and without any intent to defraud the *Housatonic Iron Company,* or any creditors thereof; neither said mortgage or judgment will thereby be impaired. But if said claim on the *Housatonic Iron Company* by *Fenn,* was fictitious or fraudulent, and that known to *G. I. Vincent & Co ;* or if, in that case, they had any just reason to doubt its validity, and did not take and insert the amount in said mortgage note honestly and in good faith, said mortgage and judgment, are void as against the plaintiff.

" The plaintiff insists, that the mortgage note to *G. I. Vincent & Co.* was paid, after the mortgage, and before said judgment was rendered thereon ; and that, therefore, the mortgage is satisfied and the judgment void. If you find this payment, and that the beneficial interest of *G. I. Vincent & Co.* in the mortgage was thereby actually satisfied and extinguished, they cannot set up the mortgage or judgment as a defence in this case."

The jury gave a verdict for the plaintiff; and the defendants moved for a new trial.

*W. W. Ellsworth* and *L. Church,* in support of the motion, contended, 1. That the admissions of *Fenn* were inadmissible as against *G. I. Vincent & Co.* *Fenn* was a mere tenant, without any interest in the issue tried. He claimed no title. No right of his was in controversy.

*Litchfield,*
June, 1842.

Smith
*v.*
Vincent.

2. That evidence of *Fenn's* circumstances was inadmissible. It did not appear that *G. I. Vincent &. Co. knew* what his circumstances were. Such evidence ought not to go to the jury to affect their rights.

3. That after the plaintiff had been permitted to prove *Fenn's* circumstances, the evidence offered by the defendants to repel that proof, should have been received. The defendants offered to show from *Fenn's* books, that his debtors owed him enough to enable him to make the advances in question. Suppose the defendants had thus shown a debt against the president of the branch bank in *Litchfield* for 10,000 dollars; would not this have conduced to repel the claim of *Fenn's* poverty? The books of *Fenn* are *original*, and not *hearsay* evidence. There are two kinds of entries which are evidence, and on distinct grounds. The first kind consists of four divisions; first, where the fact of entry or declaration is to be proved; secondly, where the feelings of a sick person are to be shown; thirdly, where pedigree or what a person is called by his family, is to be proved; and fourthly, where the entries constitute the *res gestæ. Greenl. Evid.* 147. Now, entries in regular account books, fall within the first class. Entries merely against a man's interest, though not in regular books, and indeed mere declarations, are admissible only because they are against interest, and the person who made them is dead; neither of which facts is essential in the case of regular books. See the cases in *Greenl. Evid.* from *p.* 134 to 147. The *Connecticut* cases are to the same effect. *Dwight* v. *Brown,* 9 *Conn. Rep.* 89–93. *Weeden* v. *Hawes,* 10 *Conn. Rep.* 55. *Cook* v. *Swan,* 5 *Conn. Rep.* 145–148. As between *A* and *B,* if it becomes material to prove the indebtedness of *C* to *D* or others, the *usual evidence* of such indebtedness is admissible—*e. g.* the note of *C* to *D;* and so the book account of *D* against *C,* though neither *D,* nor his clerk, can swear to the articles charged. The book, like the note, is part of the *res gestæ,* and is the usual, and legal, and necessary evidence of the indebtedness of *C.* 9 *Conn. Rep.* 93. *Livingston* v. *Tyler* & al. 14 *Conn. Rep.* 493. 499. *Greenl. Evid.* 214.

4. That the charge as to the judgment, is wrong. The judgment is held void *in toto,* if the *Hawes* debt had not by *Hawes* been transferred to *G. I. Vincent & Co.* Now we claim,

that if *G. I. Vincent & Co.* had actually agreed with the *Housatonic Iron Company* to assume it and pay it, it was enough. As to the *Housatonic Iron Company*, there remains no contingency, and nothing in the nature of a conditional liability on the part of *G. I. Vincent & Co.* It is now their absolute debt. The creditors of the *Housatonic Iron Company* cannot say they are injured. *G. I. Vincent & Co.* have agreed to cancel that debt ; and now why might not the *Housatonic Iron Company* give their note to *G. I. Vincent & Co.* for it ? This is an every day transaction. If eventually the *Housatonic Iron Company* should have to pay *Hawes,* equity would relieve; but here the debt has been paid by *G. I. Vincent & Co.*

5. That the mortgage debt being due and unpaid, as claimed by the defendants, the mortgage title in them is a perfect defence. He who has the legal title, cannot be ejected at law, by him who has the equitable interest. *Phelps* v. *Sage,* 2 *Day* 151. The case of *Porter* v. *Seeley,* 13 *Conn. Rep.* 574. decides only that the mortgage title of a *stranger* cannot be set up, whether the mortgage debt is paid or subsisting ; which case is not contrary to *Phelps* v. *Sage.*

*O. S. Seymour* and *Sanford,* contra, contended, 1. That the evidence offered by the plaintiff of *Fenn's* poverty, was properly received. *Fenn's* account, amounting to 3538 dollars, 50 cents, was principally for money advanced to the *Housatonic Iron Company,* in a single year. Would it not conduce to prove that these advances were not made, to show that *Fenn* had not the ability to make them ? *Olmsted* v. *Hoyt* & al. 11 *Conn. Rep.* 376. *Jackson* d. *Hooker* v. *Mather,* 7 *Cowen* 301. 305.

2. That the books of *Fenn,* containing his charges for professional services, were rightly rejected. In the first place, they were the entries of the party who offered them, made by himself, not against his interest at the time of making them. 1 *Phil. Ev.* 255. (new ed.) 1 *Stark. Ev.* 69, 70. *Case* v. *Potter,* 8 *Johns. Rep.* 211. Secondly, these entries were regarding matters *res inter alios acta. Treat* v. *Barber,* 7 *Conn. Rep.* 274. Thirdly, they did not conduce to prove the point for which they were offered. They were

*charges only,* without credits or ascertained balances.    They were unaccompanied by evidence of their fairness.

3. That *Fenn's* disclosures and admissions were properly admitted.    *Fenn* was one of the defendants, in possession, claiming title.    1 *Phil. Ev.* 89.    *Bauerman* v. *Radenius,* 7 *Term Rep.* 659.    *Plant* v. *McEwen,* 4 *Conn. Rep.* 549. This evidence was received with the qualification that it should not affect the other defendants ; consequently, all objection on that ground, is out of the way.

4. That the charge as to the *Hawes* debt, the mortgage and the judgment, furnished no ground for a new trial.    In the first place, the remark of the judge, that if *G. I. Vincent & Co.* had undertaken absolutely to pay the *Hawes* note, *or* if there was no fraud in including it in their note, the including of it would not impair the title under the mortgage,— was exactly what the defendants claimed.    And the additional remark, that if the *Hawes* portion of their note was, at the time of taking judgment, held as a mere indemnity, the judgment was void,—was uncalled for, by any existing state of facts, and could have no possible effect upon the verdict.    But secondly, be this as it may, the charge was right.    Such a judgment, as against creditors, is void.    The judgment is indivisible, and so is the levy.    *Beach* v. *Walker,* 6 *Conn. Rep.* 190.    *Stetson* v. *Kempton* & al. 13 *Mass. Rep.* 27. 283.    *Libby* v. *Burnham* & al. 15 *Mass. Rep.* 144.    *Hyslop* & al. v. *Clarke* & al. 14 *Johns. Rep.* 458.    *Chater* v. *Beckett,* 7 *Term Rep.* 201.    *Bliss* & al. v. *Negus,* 8 *Mass. Rep.* 46. 51.    *North* v. *Belden,* 13 *Conn. Rep.* 378. 381. *Boyd* & al. v. *Dunlap* & al. 1 *Johns. Ch. Rep.* 478. 482. 1 *Fonb. Eq.* 123. n.    But thirdly, if the charge was wrong upon this point, it could not have affected the verdict, because, though the judgment was void, for this reason, the mortgage was good.

5. That if the note was paid before judgment, the defendants cannot defend under either judgment or mortgage.    As to the judgment, this part of the charge cannot be denied. It is right also as to the mortgage.    In the first place, it does not appear that the mortgage was forfeited, at the time judgment was rendered.    4 *Kent's Com.* 148.    2 *Sw. Dig.* 169. Secondly, it will not be presumed to be before forfeiture, if it does not so appear.    1 *Phil. Ev.* 369. n.    Thirdly, it is immaterial whether it was or not ; for payment of the mort-

gage debt at any time, puts an end to the mortgagee's title.
4 *Kent's Com.* 187. n. 1 *East* 293. 2 *Barnardist.* 99. 2
*Burr.* 978. 5 *Conn. Rep.* 139. 4 *Conn. Rep.* 237. 13 *Conn.*
*Rep.* 564. All the *incidents* of an unincumbered legal estate
in fee, attach to the mortgagor's estate. *Doug.* 630. 2 *Conn.*
*Rep.* 600. 1 *Conn. Rep.* 559. 4 *Day* 229. 4 *Conn. Rep.*
421. And none of them to the estate of the mortgagee.
5 *Conn. Rep.* 133. 531. 1 *Conn. Rep.* 560. 4 *Conn. Rep.*
235. The mortgagee's only right is to recover possession;
and that, for the sole purpose of obtaining payment. 1
*Conn. Rep.* 560. 4 *Day* 242. 4 *Conn. Rep.* 237. 424. 2
*Conn. Rep.* 446. 13 *Conn. Rep.* 537. 574. 11 *Johns. Rep.*
538. 4 *Johns. Rep.* 41. 5 *Wend.* 615. 6 *Johns. Rep.* 294.
19 *Johns. Rep.* 325. 4 *Kent's Com.* 185, 6, 7, n. Accord-
ing to the old doctrine, the mortgagee, after payment, is a
*trustee* of the legal title for the mortgagor. 4 *Day* 240. 1
*Pow. Mort.* 142. But a trustee will not be permitted to set
it up. 1 *Term Rep.* 3. 759. n. 2 *B. & A.* 782. 1 *Saund.*
*Pl. & Ev.* 530.

6. That complete justice has been done, in this case; and,
on that ground, a new trial will not be granted. 11 *Conn.*
*Rep.* 538. 10 *Conn. Rep.* 280.

WILLIAMS, Ch. J. 1. Were *Fenn's* admissions properly
received? It is claimed that *Fenn* is a mere tenant, and has
no real interest. But he was properly made a party to the
suit; and the plaintiff must prove his case against each and
every defendant; and the court can no more exclude the ad-
missions of one defendant than of another, under the idea
that one has a deeper interest than another. If the suit were
on a note against principal and surety, the declarations of the
surety could not be ruled out, although if the principal is of
sufficient ability, he would have but a nominal interest. And
this court has decided, that the declarations of a party on
record must be received as evidence, though his situation may
be taken into consideration in weighing the evidence. *Coit*
v. *Tracy,* 8 *Conn. Rep.* 277. In this case, proper instructions
were given to the jury as to its character; and we can see
no other course, which could have been legally pursued.

2. The question as to the evidence of *Fenn's* pecuniary
condition, has been too recently before this court, and too

HARVARD LAW LIBRARY

much considered, to allow us again to debate it : we are satisfied with the decision in *Olmsted* v. *Hoyt,* & al. 11 *Conn. Rep.* 376.

3. To meet the evidence last-mentioned, the defendants offered to prove *Fenn's* property to have been considerable. To this, no objection was made.   They then offered to prove, by the book of accounts kept by *Fenn,* and the entries therein made, that there were debts due him to a large amount.   This evidence was excluded; and we think, it was properly excluded.   This evidence is a naked entry of a party in interest, in his own favour, upon his books, that he has delivered such and such articles, and done such service for another for which he expects payment, unaccompanied with any proof of the time when made, or of the fairness of his books, or that he kept account of credit as well as debt, or any corroborating circumstance in connexion therewith. In *Dwight* v. *Brown,* 9 *Conn. Rep.* 84. 89., where the entry was made against the interest of the party making it, the evidence was admitted, by a divided opinion of this court; but the cautious manner in which that opinion is guarded, shows what would have been the opinion of the court, at that time, upon this question.   And in the case of *Newell* v. *Roberts,* 13 *Conn. Rep.* 72. we refused to admit receipts of third persons as evidence, upon proof that they were duly signed.   There, to be sure, the witnesses might be called ; but it was considered that such testimony was of a dangerous character.   How much more dangerous would this be ?   It comes from one who had a deep interest in the subject matter, and is unaccompanied with any corroborating circumstance, or with any account of the time of making the entries, or any fact tending to show it is a full account between the parties.   And upon each several account, an issue might be joined to show the state of indebtedness between the parties.

It is said, however, that it is admissible, because it is *original* in its character.   *Greenl. Evid.* 147.   Upon examining the authorities referred to there, we think none goes the length of this case.   Indeed, it is believed, that the two late *English* common law authorities will justify the ground taken by the judge in this case.   These were cases of acts done, and entries made of those acts, by an attorney and a clerk, then deceased, in the course of their business, and ac-

cording to it, admitted with other corroborating circumstan-
ces to prove the fact.   In the case of *Doe* d. *Patteshall* v.
*Turford*, 3 *Barn. & Adol.* 890. the fact that the entry was
made at the time, that it was according to the course of the
business at the office, that it was according to a request to
give the notice, and the fact that other notices were also then
given, were considered as important.   And these corrobora-
ting circumstances, says *Taunton*, J., must be proved.   And
in *Poole* v. *Dicas*, 1 *Bing*. *N. C.* 649. the entry of the dis-
honour of a bill by a clerk, in a book kept for that purpose,
he being deceased, was admitted, *Tindal*, Ch. J., considering
it to have been proved, that the entry was made at the time,
(if it was not, he says it should be sent back again,) adds: " It
was all in the ordinary course of business.   The clerk had
no interest in making a false entry : it would be likely to bring
him into disgrace with his employers.   The book was open
to all the clerks, so that a false entry would be exposed to a
speedy discovery ; and there were many corroborating cir-
cumstances."   *Gasalee*, J., says : " The entry is one of a
chain of circumstances, each confirmatory of the other, and
therefore, the reception of the evidence was correct."   All
such circumstances are here wanting ; and we think this evi-
dence was properly excluded.

4. As to the *Hawes* debt, the defendants now claim, that
the court should have instructed the jury, that this debt was
paid.   But we do not find that any such claim was made
below.   And if it had been, we think it was rather a ques-
tion of fact on which the jury were to pass, than of law.
And were it otherwise, we are not prepared to say, that there
is such evidence of actual payment, as will justify us in grant-
ing a new trial.

5. One other objection was made to the charge ; that the
judge held, that if the mortgage of the defendants was paid,
it furnished no defence for them in this action.   If we were
to be governed by the authorities in the state of *New-York*,
or the opinion of the distinguished commentator, who so ably
filled the chancellor's seat, this would be correct.   *Kent's*
*Com. part* VI. *lect.* 58.   But this question was settled, by
the supreme court of this state, after an able argument, in
the case of *Phelps* v. *Sage*, 2 *Day* 151. in conformity to the
well settled practice.   The same decision has been made in

the state of *Massachusetts.* *Parsons* v. *Welles* & al. 17 *Mass. Rep.* 419. And whatever may be said of the more liberal practice of modern times, we think that it will much better comport with the policy of our laws, that the parties should have this inducement to make our records show, as far as practicable, the real state of the title to real property. Ch. J. *Hosmer* treats it as a settled question. 5 *Conn. Rep.* 136. And we had no intention of disturbing it, by the decision of *Porter* v. *Seeley,* 13 *Conn. Rep.* 564. The judge who gave the opinion in that case, does indeed introduce the decision in the state of *New-York;* but, without adverting to the case of *Phelps* v. *Sage,* he sums up that case, by saying, that "the attempt to bar the action, by the title of the mortgagee, is made by a *stranger,* who has no interest whatever, in the debt or land." *P.* 576. So far the court intended to go, and no farther. We would not permit a person without a shadow of title, to protect himself, by a satisfied mortgage. In doing this, however, the court could not have intended to overrule a decision on this very point, which was not adverted to, on the trial. If the condition of this deed was not performed, we cannot see why the legal title does not remain in the mortgagee; and if equity would seem to require us to say, that the debt being paid, the object is accomplished, and so the title reverts, we would say in reply, that it is the policy of our law that our titles should appear upon our records; and we are not disposed to overturn decisions, well calculated to subserve that object.

As it does not appear upon this motion at what time this payment was made, perhaps the fair presumption is, that the payment was made at the day, and so the condition is performed. At all events, the party moving for a new trial, ought to show, that it was after the day. As this does not appear, we do not feel called upon to grant a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.