16-158
*Corsair Special Situations Fund, L.P. v. Pesiri*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2016

(Argued:  October 24, 2016      Decided:  July 13, 2017)

Docket No. 16-158

─────────────────

Corsair Special Situations Fund, L.P.,
*Plaintiff-Appellant*,

v.

State Marshal Mark Pesiri,
*Intervenor-Appellee*,

Engineered Framing Systems, Inc., John J. Hildreth, Marie N. Hildreth, EFS
Structures, Inc.,
*Defendants*.

─────────────────

Before:       LEVAL, SACK, and RAGGI, *Circuit Judges*.

Corsair Special Situations Fund, L.P., a judgment creditor, and Mark Pesiri, a Connecticut State Marshal, dispute whether Pesiri is entitled under a state statute that awards a fifteen percent commission "for the levy of an execution, when the money is actually collected and paid over, or the debt . . . is secured by the officer," to fifteen percent of the more than $2,000,000 that Corsair obtained via turnover order after Pesiri served a writ of execution on a third party,

National Resources, that had transacted with one of Corsair's judgment debtors.

The United States District Court for the District of Connecticut (Janet C. Hall, *Judge*) ruled in favor of Pesiri, granting his motion for more than $300,000 in fees, even though he did no more than serve a writ of execution. Corsair appeals, arguing that Pesiri did not complete the "levy of an execution" and, therefore, is not entitled to a fifteen percent commission under state law. We conclude that Connecticut state law is insufficiently developed for us to answer the question raised on appeal.

We therefore CERTIFY the question to the Connecticut Supreme Court.

JUDGE LEVAL concurs in a separate opinion.

MATTHEW S. STURTZ (Derek P. Roussillon, *on the brief*), Miles & Stockbridge P.C., Baltimore, MD; Gregory J. Spaun, *on the brief*, Welby, Brady & Greenblatt, LLP, Danbury, CT, *for Plaintiff-Appellant.*

NEIL L. MOSKOW (Deborah M. Garskof, *on the brief*), Ury & Moskow, L.L.C., Fairfield, CT, *for Intervenor—Appellee.*

SACK, *Circuit Judge*:

Section 52-261 of the Connecticut General Statutes governs "[f]ees and expenses of officers and persons serving process or performing other duties." CONN. GEN. STAT. § 52-261 (2011). It provides that an officer is entitled "for the

*levy of an execution*, when the money is actually collected and paid over, or the debt . . . is secured by the officer, [to] *fifteen per cent* [sic] *on the amount of execution* . . . ." *Id*. § 52-261(a)(F) (emphases added). The question on appeal is whether the actions of the intervenor, Mark Pesiri, a Connecticut State Marshal who did no more than serve a writ of execution on behalf of Corsair Special Situations Fund, L.P. ("Corsair"), qualified for the fifteen percent commission provided by § 52-261(a)(F). The United States District Court for the District of Connecticut (Janet C. Hall, *Judge*) ruled in favor of Pesiri, concluding that he was entitled to fifteen percent of the $2,308,504 that Corsair obtained via turnover order from National Resources, a third party that transacted with one of Corsair's judgment debtors, EFS Structures Inc., one of four defendants—together with Engineered Framing Systems, Inc., John J. Hildreth, and Marie N. Hildreth—against which Corsair obtained judgment. Corsair appeals from the district court's fee award, contending that Corsair alone secured the debt and that the "levy of an execution" entails more than serving a writ of execution. Because Connecticut case law does not resolve this important and dispositive question of statutory interpretation, we CERTIFY the question to the Connecticut Supreme Court. *See id*. § 51-199b(d).

## BACKGROUND

In June 2010, plaintiff-appellant Corsair Special Situations Fund, L.P. ("Corsair") obtained a judgment of $5,443,171.33 from the United States District Court for the District of Maryland jointly and severally against defendants Engineered Framing Systems, Inc., John J. Hildreth, Marie N. Hildreth, and EFS Structures, Inc. While attempting to enforce its judgment, Corsair learned that one of the judgment debtors signed a contract with a Connecticut-based third party, National Resources,[1] entitling that judgment debtor to a payment from National Resources of more than $3,000,000. So apprised, Corsair caused its judgment to be certified for registration in another district and, on September 29, 2011, enrolled its judgment in the United States District Court for the District of Connecticut, which issued a writ of execution.

---

[1] According to the later decision issued by the United States District Court for the District of Connecticut (Janet C Hall, *Judge*) in favor of Corsair and against National Resources, "National Resources is not itself a legal entity. . . . National Resources functions, in effect, as the trade name of a cluster of companies, including the three LLCs listed in the marshal's Execution on Property." *Corsair Special Situation Fund, L.P. v. Engineered Framing Sys. Inc.*, 2013 WL 5423677, at *2, 2013 U.S. Dist. LEXIS 138204, at *5-6 (D. Conn. Sept. 26, 2013) (internal quotation marks omitted), *aff'd*, 595 F. App'x 40 (2d Cir. 2014).

Seeking to levy on the money National Resources owed to Corsair's judgment debtor,[2] Corsair engaged Connecticut State Marshal Mark Pesiri, who, on September 30, 2011, successfully served on National Resources a writ of execution, which stated in relevant part:

> Pursuant to Conn. Gen. Stat. § 52-356a, you are required to deliver to the marshal[] property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal when the debt becomes due within four months after the date of issuance of this execution.

Joint App'x at 26.

It is undisputed that National Resources ignored the writ. In fact, between October 3, 2011, and November 25, 2012, National Resources paid Corsair's judgment debtor and another of its creditors $2,308,504. Following protracted post-judgment discovery, Corsair obtained an order from the district court commanding National Resources to turn over $2,308,504 to Corsair pursuant to the writ of execution. National Resources appealed the turnover order to this

---

[2] Corsair sought to enforce its federal judgment pursuant to state law. *See* Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment of execution—must accord with the procedure of the state where the court is located . . . .").

Court, which affirmed the district court's order. *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 45-46 (2d Cir. 2014) (summary order). We noted in our decision that Corsair, through Pesiri, successfully effected "personal service of its writ on . . . National Resources" before National Resources transferred $2,308,504 to Corsair's judgment debtor and another of National Resource's creditors. *Id.* at 46.

As the dispute between Corsair and National Resources drew to a close, this litigation was just beginning. On May 1, 2015, Pesiri filed a motion to intervene, seeking "statutory fees owed him pursuant to Conn. Gen. Stat. § 52-261(a)." Mot. to Intervene at 1, *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys. Inc.*, No. 11-cv-01980-JCH (D. Conn. May 1, 2015), ECF No. 98. Section 52-261(a), which governs "[f]ees and expenses of officers and persons serving process or performing other duties," provides in relevant part:

> The following fees shall be allowed and paid: . . .
> (F) for the levy of an execution, when the money is
> actually collected and paid over, or the debt or a portion
> of the debt is secured by the officer, fifteen per cent [sic]
> on the amount of the execution, provided the minimum
> fee for such execution shall be thirty dollars . . . .

6

CONN. GEN. STAT. § 52-261(a)(F) (2011).  Pesiri complained that Corsair intended to pay him $30, rather than fifteen percent of the $2,308,504 that was "actually collected and paid over," *id.*, which amounts to $346,275.60.

On January 11, 2016, the district court ruled in Pesiri's favor.  Observing that Connecticut case law defines "levy" as "an actual or constructive seizure," *Corsair*, 2016 WL 128089, at *4, 2016 U.S. Dist. LEXIS 3322, at *14 (quoting *Nemeth v. Gun Rack, Ltd.*, 659 A.2d 722, 726, 38 Conn. App. 44, 52-53 (Conn. App. Ct. 1995)), the district court explained in part that, although Pesiri did not "actually seize the money that National Resources owed the judgment debtor, he did constructively seize it by putting National Resources on notice of its legal obligation to deliver the money it owed the judgment debtor to Pesiri," *id.* at *4, 2016 U.S. Dist. LEXIS 3322, at *15.  Corsair now appeals the order granting Pesiri $346,275.60 in fees.

**STANDARD OF REVIEW**

We review the district court's interpretation of a state statute *de novo*.  *KLC, Inc. v. Trayner*, 426 F.3d 172, 174 (2d Cir. 2005).

**DISCUSSION**

The question on appeal is whether service of a writ of execution qualifies for the fifteen percent fee provided by § 52-261, where the writ is ignored and the judgment creditor, not the serving officer, pursues further enforcement proceedings to obtain the monies that were the subject of the writ. Because we think the Connecticut Supreme Court is the appropriate court to answer that question in the first instance, we certify the question to that court for review.

**I.     Section 52-261(a)(F)**

Section 52-261 of the Connecticut General Statutes concerns the "[f]ees and expenses of officers and persons serving process or performing other duties." CONN. GEN. STAT. § 52-261. Subsection (a) establishes minimum and maximum fees for an individual who effects "service of [] process." *Id.* § 52-261(a). It also enumerates certain circumstances in which additional "fees shall be allowed and paid." *Id.* Of relevance here, the statute provides that an individual is entitled to "fifteen per cent [sic] on the amount of the execution" "for the levy of an execution, when the money is actually collected and paid over, or the debt . . . is secured by the officer." *Id.* § 52-261(a)(F).

The statute does not define "levy of an execution." Legislative history is similarly silent. A comparable term, "levy of execution," is defined by Black's Law Dictionary as "[t]he legally sanctioned seizure and sale of property" or "the money obtained from such a sale," but that entry does not define "seizure." BLACK'S LAW DICTIONARY 1047 (10th ed. 2014).

One might glean meaning from related statutory provisions. For example, § 52-356a provides that where, as here, the property of a judgment debtor is held by a third party, "the levying officer shall serve that person with a copy of the execution and that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer. . . ." CONN. GEN. STAT. § 52-356a(a)(4)(B). Where the judgment debtor is in possession of the property to be levied, by contrast, the "levying officer shall . . . make [a] demand for payment" before "levy[ing] on nonexempt personal property of the judgment debtor." *Id.* § 52-356(a)(4). These provisions might be understood to suggest, as the district court thought, that because the debtor's property in this case was held by a third party, "there was nothing more that Pesiri could have done under the circumstances" beyond serving the writ of execution, so he is therefore "entitled to the 15%" fee. *Corsair*, 2016 WL 128089, at *5, 2016 U.S. Dist. LEXIS 3322, at *16.

9

The same provisions, however, might also be understood to suggest that "serv[ing] . . . a copy of the execution," "demand[ing] [] payment," and "levy[ing] on . . . property" are not one and the same. CONN. GEN. STAT. § 52-356a(a); *see also id.* § 52-356a(a)(4)(B) (outlining "serv[ice]" as a part of the process of levying). Moreover, as previously noted, § 52-356a, which outlines the "[p]rocedure" a "levying officer" is to follow where "personal property . . . is in the possession of a third person," provides that the "levying officer" shall "levy on nonexempt personal property of the judgment debtor" in "the possession of a third person" by "serv[ing] that person with a copy of the execution, *and* that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer." *Id.* (emphasis added). Although there is no doubt that Pesiri "serve[d] [National Resources] with a copy of the execution," § 52-356a(a)(4)(B) is plainly conjunctive and appears to contemplate more, viz., "that [National Resources] shall forthwith deliver the property . . . *to* the levying officer," which did not take place here. *Id.* (emphasis added).

The Concurrence suggests that this ambiguity is resolved, in part, by § 52-356a(a)(5), *see* Concurrence at 7-8, which provides that "[l]evy under [§ 52-356a] on property held by . . . a third person shall bar an action for such

10

property against the third person provided the person acted in compliance with the execution," CONN. GEN. STAT. § 52-356a(a)(5). Judge Leval reasons that this provision "treats the officer's service of the writ as a 'levy' ('levy under this section') and as an 'execution' ('acted in compliance with the execution') regardless of whether the third person delivered the property to the officer" because "[i]f it were correct that 'levy' has not occurred until the third person 'deliver[s]' the property to the levying officer, then this provision would make no sense." Concurrence at 7-8.

That may well be. It might also be, however, that § 52-356a(a)(5)'s immunization of third parties that "act[] in compliance with the execution," i.e., those that "forthwith deliver the property or pay the amount of the debt due or payable to the levying officer," CONN. GEN. STAT. § 52-356a(a)(4)(B), establishes that the "[l]evy" and "execution" are distinct, *id.* § 52-356a(a)(5). And, as previously noted, the former might be completed only where the property at issue has been "deliver[ed] . . . to the levying officer." *Id.* § 52-356a(a)(4)(B).

This interpretation appears reasonable inasmuch as § 52-356a(a)(5) applies not only to physical property, but also to fungible property. *See id.* § 52-356a(a)(5) (referring to "property held by, *or a debt due from*, a third person"

11

(emphasis added)).  It might be that in some circumstances the completed "[l]evy . . . on . . . a debt due from [] a third person," who "acted in compliance with the execution" by "pay[ing] the amount of the debt due or payable to the levying officer," immunizes the third person from a subsequent "action" for the equivalent amount, even if the debt due was not ultimately transferred to the creditor.  In other words, under this interpretation, § 52-356a(a)(5) provides, *inter alia*, that the accomplishment of a levy does not turn on whether the levying officer delivers the property or debt that has been "collected and paid over."  *Id.* § 52-261(a)(F).  Therefore, in light of this possible interpretation, Section 52-356a(a)(5) does not necessarily establish, as Judge Leval suggests, that a levy is accomplished regardless of whether a third party complies with the writ of execution.

Moreover, as Judge Leval notes, *see* Concurrence at 11-13, how one interprets "levy" as used in § 52-356a provides at most an incomplete picture as to how one interprets § 52-261(a)(F), which awards a fifteen percent commission for "the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer," CONN. GEN. STAT. § 52-261(a)(F).  Although in this case the "money [was] actually collected and

12

paid over," Pesiri himself did little to achieve that outcome, which was accomplished pursuant to a court order against National Resources. *See Corsair Special Situations Fund, L.P.*, 595 F. App'x at 45-46. Section 52-261(a)(F) does not make clear whether the requirement for action "by the officer" applies generally, however "the money is actually collected and paid over," or only where a "debt or a portion of the debt is secured by the officer." *Id.*[3]

While Connecticut case law is generally unavailing in the effort to determine the meaning of the statute, several state courts have opined on the meaning of phrases similar to "levy of an execution." In *Preston v. Bacon*, 4 Conn. 471 (1823), Connecticut's highest court was faced with an analogous dispute over how to interpret a nineteenth-century precursor to § 52-261(a) that entitled an officer to a two percent commission "for levying and collecting every execution, where the money is actually collected and paid over," or "where the debt is secured and satisfied, by the officer, to the acceptance of the creditor," *id.* at 473. The court determined that the plaintiff, a sheriff who arrested the debtor but did

---

[3] As Judge Leval observes, whether the rule of the last antecedent applies is a contextual question. *See* Concurrence at 14; *see also Lockhart v. United States*, --- U.S. ---, 136 S. Ct. 958, 965 (2016) (noting that the "Court has long acknowledged that structural or contextual evidence may rebut the last antecedent inference" (internal quotation marks omitted)).

not himself secure any of the debt, which was paid directly to the creditor, was not entitled to a two percent commission. *Id.* at 475. The court explained that "[t]he language of the statute plainly requires [] that the officer shall *do something*. The officer is to procure the satisfaction; [and] to offer it for the acceptance of the creditor[.]" *Id.* at 476 (emphasis in original). The court observed that this interpretation "ma[d]e[] the statute intelligible" because "the statute contemplate[d] [the officer] as the *primary* agent, in effecting the security eventually obtained." *Id.* (emphasis in original).

The parties on appeal draw our attention to two additional state court decisions. First, in *Nemeth*, a state appellate court determined that "levy," as used in a different provision of the Connecticut General Statutes, means "a seizure, either actual or constructive, of [] property." *Nemeth*, 659 A.2d at 726, 38 Conn. App. at 53 (internal quotation marks omitted) (interpreting CONN. GEN. STAT. § 42a-6-110, which addresses the time in which an "action . . . shall be brought [or] levy made" following transfer of a judgment debtor's property to a transferee).

Second, in *Masayda v. Pedroncelli*, No. CV94-0120878S, 1998 WL 420779, 1998 Conn. Super. LEXIS 2048 (Conn. Super. Ct. July 20, 1998), the court

14

addressed an officer's claim that an earlier version of § 52-261 entitled him to ten percent of a debt that was "forwarded" directly from the debtor to the creditor after the officer served a bank execution on the debtor, *id.* at *1, 1998 Conn. Super. LEXIS 2048, at *1. At that time, § 52-261 provided in relevant part:

> The following fees shall be allowed and paid [to an officer or person] . . . (6) *for levying an execution*, when the money is actually collected and paid over, or the debt secured by the officer to the acceptance of the creditor, *ten percent on the amount of the execution . . . .*

CONN. GEN. STAT. § 52-261(a) (1998) (emphases added). The court decided, without explanation, that the officer "levied an execution and the money was actually collected and paid over," entitling him to a ten percent commission. *Maysada*, 1998 WL 420779, at *1-2, 1998 Conn. Super. LEXIS 2048, at *3-4 ("[A]fter levying the execution, payment by the debtor directly to the creditor should not deprive the sheriff of his fee.").

These decisions do not, however, define the "levy of an execution" as it is used in § 52-261 or address whether service of a writ of execution qualifies as such, particularly where the writ is ignored and the judgment creditor pursues further enforcement proceedings to secure the monies that were the subject of the writ. Moreover, of the cases above, only *Preston* was decided by Connecticut's

15

highest court, and that case concerned a different statute. *See Preston*, 4 Conn. at 473. Specifically, it turned on the court's understanding of the phrase, "where the debt is secured and satisfied [] by the officer," not the more closely related phrase, "for levying and collecting every execution." *Id.* at 474 ("This point turns on the question whether this execution was *secured and satisfied, by the officer* . . . ."). Similarly, *Nemeth*, decided by an intermediate appeals court, did not concern the meaning of "levy of an execution," let alone whether service of a writ of execution is the "levy of an execution" as that phrase is used in § 52-261. *Nemeth*, 659 A.2d at 725, 38 Conn. App. at 51 (interpreting "levy made" as used in CONN. GEN. STAT. § 42a-6-110). Finally, *Maysada*, an unpublished memorandum of decision issued by the Superior Court of Connecticut, also addressed a distinct, if related, statutory phrase. *Maysada*, 1998 WL 4207709, at *1, 1998 Conn. Super. LEXIS 2048, at *1 (interpreting "levying an execution").

The resultant ambiguity is compounded by legitimate doubts as to whether Connecticut state law would sanction such a large fee award for merely serving a writ of execution on a third party. The district court's conclusion that "Pesiri did levy the execution on National Resources when he served National Resources with the Writ, made demand upon National Resources, and

16

constructively seized the money that National Resources owed the judgment debtor," entitling him to a fifteen percent commission, *Corsair*, 2016 WL 128089, at *6, 2016 U.S. Dist. LEXIS 3322, at *20, is not without risks.  It might, for example, encourage a levying officer to do no more than serve a writ of execution with the hope that this will be credited as the "levy of an execution" and rewarded accordingly.  In light of these ambiguities, we deem certification to be advisable.

**II.     Certification to the Connecticut Supreme Court**

"Although the parties did not request certification, we are empowered to seek certification *nostra sponte*."  *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 198 (2d Cir. 2009).  We have long recognized the appropriateness of according to state courts the opportunity to decide significant issues of state law through the certification process.  *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015).  When faced with a "question of statutory interpretation" in particular, "principles of comity and federalism strongly support certification."  *Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003).  "Connecticut law allows for the federal certification of questions of state law directly to the Connecticut Supreme Court."  *Parrot v.*

17

*Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003) (citing CONN. GEN. STAT. § 51-199b(d)).

When assessing whether to certify a question for review, we have traditionally considered whether a state court decision "has ever provided an authoritative answer," *Caruso v. Siemens Bus. Commc'ns Sys., Inc.*, 392 F.3d 66, 71 (2d Cir. 2004), the extent to which the question "implicates the weighing of policy concerns" of particular importance, *Sealed*, 332 F.3d at 59, and if the Connecticut Supreme Court's "answer may be determinative" of the appeal, *Munn*, 795 F.3d at 334.

Because we lack authoritative guidance from the Connecticut Supreme Court on this important question of state policy that is determinative of the appeal, we deem the question whether service of a writ of execution is the "levy of an execution" that qualifies, without more, for the fifteen percent commission provided by § 52-261(a)(F) appropriate for certification. The sole issue on appeal is whether service of a writ of execution entitled Pesiri to the fifteen percent fee when the writ was ignored and the judgment creditor, not the marshal, obtained the monies that were the subject of the writ. The Connecticut Supreme Court's interpretation of § 52-261(a)(F) will enable us to determine whether the district

18

court erred by awarding Pesiri a fifteen percent commission on the amount Corsair obtained via turnover order from National Resources.

* * *

In light of the foregoing, we certify the following questions to the Connecticut Supreme Court:

(1) Was Marshal Pesiri entitled to a fifteen percent fee under the terms of CONN. GEN. STAT. § 52-261(a)(F)?

(2) In answering the first question, does it matter that the writ was ignored and that the monies that were the subject of the writ were procured only after the judgment creditor, not the marshal, pursued further enforcement proceedings in the courts?

We welcome the guidance of the Connecticut Supreme Court on any related state law issues that would aid in the resolution of this matter. Accordingly, the certified questions may be expanded to cover any related question of Connecticut law that the Supreme Court deems appropriate to resolve in relation to this appeal.

## CONCLUSION

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Connecticut Supreme Court this opinion as our certificate, together with a

19

complete set of briefs, the appendix, and the record filed in this Court by the parties. The parties shall bear equally any fees and costs that may be imposed by the Connecticut Supreme Court in connection with this certification. This panel retains jurisdiction and will resume its consideration of this appeal after the disposition of this certification by the Connecticut Supreme Court.

**CERTIFICATE**

The foregoing is hereby certified to the Connecticut Supreme Court pursuant to Second Circuit Local Rule 27.2 and CONN. GEN. STAT. § 59-199b(d), as ordered by the United States Court of Appeals for the Second Circuit.

LEVAL, Circuit Judge, concurring:

I concur in my colleagues' opinion certifying our question of Connecticut law to the Connecticut Supreme Court. Without doubt, certification has advantages. For a case litigated in the federal court, the parties would have no opportunity without certification to solicit the answer of the state's highest court to controlling questions of state law. Certification can also benefit the public by reliably clarifying the law of the state. At the same time, certification has significant potential detriments for the parties. It increases, at times enormously, the costs they incur in the litigation as it requires at least two additional rounds of appellate review. It also inevitably delays the resolution of the case, sometimes for well more than a year. In diversity cases, furthermore, certification can defeat a litigant's constitutionally endorsed entitlement to have its case adjudicated by the federal court rather than a state court, as certification will in many instances effectively empower the state court to determine the outcome of the litigation. Where an out-of-state litigant, for example, removes a dispute against an in-state litigant to federal court (or originates the suit in federal court), certification nevertheless returns that litigant to state court, potentially nullifying the benefit of the right of access to the federal court, authorized by Article III, and provided in 28 U.S.C. § 1332. In this case, these detriments are less worrisome because, when the possibility of certification was presented to the parties, neither side objected. I

1

therefore concur in certifying the controlling question of Connecticut law to the Connecticut Supreme Court.

Although joining in the majority's certifying opinion, I write separately because my view of the governing Connecticut statutes differs slightly from my colleagues'. Corsair argues that State Marshal Pesiri is not entitled to a fee of 15% under CONN. GEN. STAT. § 52-261(a)(F) because, according to Corsair's contention, having neither seized, nor even possessed the property, Pesiri did not perform "the levy of an execution," which is a prerequisite to an officer's entitlement to the fee.

What an officer must do to "levy" is spelled out in a different related section: § 52-356a(a)(4). (Hereinafter, I will refer to §§ 52-261(a) and 52-356a(a), and their subdivisions, as §§ 261(a) and 356a(a), leaving out the common, introductory, chapter-designating "52-.") My colleagues read § 356a(a)(4)(B), which we agree specifies the requirements for the levy of an execution on the facts of this case, as ambiguous on the question whether, in order to accomplish the levy, the officer needed not only to serve the writ of execution (which Pesiri did), but also to receive a turnover of the monies from National Resources (which Pesiri did not do). While I agree with my colleagues that the language of § 356a(a)(4)(B), viewed in isolation, is ambiguous on that question, I believe the ambiguity is resolved in Pesiri's favor by the text of a related provision, *see* § 356a(a)(5), which

treats service of the writ in these circumstances as a levy, regardless of whether the holder of the monies turned them over to the levying officer. On the other hand, in § 261(a)(F), the section that specifies the circumstance under which the 15% fee is earned, I see an ambiguity not argued by Corsair that poses a significant potential obstacle to Pesiri's entitlement to the 15% fee.

As explained in the majority opinion, Corsair had won a judgment in another court of several million dollars against EFS Structures, Inc. (hereinafter, "EFS" or Corsair's "judgment debtor") but had not succeeded in collecting the judgment. Corsair learned that National Resources, Inc., a Connecticut corporation, had transacted business with Corsair's judgment debtor and owed the judgment debtor substantial monies. Corsair obtained a writ of execution on its judgment from the Connecticut district court and engaged Marshal Pesiri to levy against National Resources, as a third party holding property of a judgment debtor.

Pesiri served the writ of execution on National Resources. The writ did not name National Resources. It stated, "[Y]ou are required to . . . pay to the marshal the amount of a debt owed by you to [EFS] the judgment debtor."App'x at 26. National Resources at first ignored the writ and indeed, in apparent defiance of the command of the writ, made a partial payment of its debt directly to the judgment debtor. Without further assistance from Pesiri, Corsair pursued National Resources and eventually obtained an order from the district court commanding National

3

Resources to pay $2,308,504 into the court, to be turned over to Corsair, and National Resources complied.

Pesiri then intervened in the suit claiming entitlement (under § 261(a)(F)) to a fee 15% of what Corsair had collected pursuant to his service of the writ of execution. Corsair disputed his claim, arguing that, under a different provision of § 261(a), his proper fee for service of the writ was $30. The district court concluded that § 356a defines what a levying officer must do to levy an execution, and that because Pesiri had done what that statute requires, he was entitled to a 15% fee. Corsair brought this appeal, arguing that seizure is an essential element of a levy, and that because Pesiri did not seize, nor even possess, the property, he did not accomplish the "levy of an execution."

I.      The requirements of § 356a(a)(4)(B).

Section 356a(a) explains what a levying officer must do in several different circumstances to levy an execution against personal property of the sort here involved (i.e., personal property that is "nonexempt . . . other than debts due from a banking institution or earnings").

Subsection (4) specifies that, once the levying officer has personally served a copy of the execution on the judgment debtor and made demand for payment, but the judgment remains unpaid, "the levying officer *shall levy . . . as follows*." *See* § 356a(a)(4) (emphasis added).

4

The following subparagraphs—(A), (B), and (C)—enumerate what the levying officer must do in three different circumstances (which cover all possibilities) in order to effectuate the levy. *See* § 356a(a)(4)(A)-(C). The requirements differ depending on whether the property of the judgment debtor is in the possession of the judgment debtor, or in the possession of a third person, and, in the latter case, on whether the judgment debtor is a natural person or not a natural person.

Subparagraph (A) applies when the property is in the possession of the judgment debtor (which is not the instant case). It specifies that "the levying officer shall take such property into his possession," if this can be done "without breach of the peace." *See* § 356a(a)(4)(A).

Subparagraph (B) (which is our case) applies when the judgment debtor is not a natural person (Corsair's judgment debtor was a corporation) and the property is in the hands of a third person (National Resources). *See* § 356a(a)(4)(B). The duty it imposes on the levying officer in this circumstance is set forth in relevant part as follows:

> [T]he levying officer shall serve that person [the third party who holds property of the judgment debtor] with a copy of the execution and that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer . . . .

*Id.*

5

In contradistinction to the immediately preceding subparagraph (A), which applies when the property is in the hands of the judgment debtor, subparagraph (B), covering property in the hands of a third person, neither requires, nor even authorizes, the levying officer to seize the property. Instead, it requires the third person who has been served with the writ to deliver the property (or pay the debt) to the levying officer. *See* § 356a(a)(4)(A).

Subparagraph (C) applies when the judgment debtor is a natural person (not the instant case) and, as with subparagraph (B), the property is in the possession of a third person. Like subparagraph (B), it requires the levying officer to serve the writ on the third person (along with other papers) and specifies the legal obligations (more complex than when the judgment debtor is a corporation) that fall on that third person as the result of being served with the writ of execution. *See* § 356a(a)(4)(C). Like subparagraph (B), which similarly applies to property in the hands of a third person, but unlike subparagraph (A), which applies to property in the hands of the judgment debtor, subparagraph (C) neither requires nor authorizes the levying officer to seize the property.

Subsection (5) provides a conditional protection for the third party against whom levy has been made from the risk of multiple liability. It states, "Levy under this section on property held by . . . a third person shall bar an action for such property against the third person *provided the third person acted in compliance*

6

*with the execution*," (i.e., delivered the property to the levying officer). *See* § 356a(a)(5) (emphasis added). Accordingly, for example, if a third person holding property of the judgment debtor does what subparagraphs (B) and (C) require when served with the writ—by delivering the property of the judgment debtor to the officer—but, for whatever reason, that property is not thereafter recovered by the judgment creditor, the third person cannot be sued for that property by the judgment debtor or the judgment creditor.

I agree with my colleagues that § 356a(a)(4)(B), if read in isolation, leaves unclear whether the service of a writ of execution on a third person, without more, constitutes a levy, or whether that subparagraph's imposition of an obligation on the third person, once served with a copy of the execution, to "forthwith deliver the property . . . to the levying officer," means that a levy has not been accomplished until the third person delivers the property to the officer. Nonetheless, when one reads this provision of subsection (4) in conjunction with subsection (5), I believe the ambiguity is resolved.

Subsection (5) explicitly treats the officer's service of the writ as a "levy" ("levy under this section") and as an "execution" ("acted in compliance with the execution") regardless of whether the third person delivered the property to the officer. By specifying that the third person upon whom "levy" has been made will be protected from suit "provided the third person acted in compliance with the

7

execution," subsection (5) makes plain that levy of execution has occurred, regardless of whether the third person upon whom levy has been made turns over the property. It means that the third person upon whom levy has been made is not thereby protected from suit by other persons unless that third person acts in compliance with the levy of execution by delivering the property. If it were correct that "levy" has not occurred until the third person "deliver[s]" the property to the levying officer, then this provision would make no sense. Subsection (5) clearly provides that levy has occurred regardless of whether the third person acts in compliance. Reading subsection (5) in conjunction with subparagraph (4)(B) means that, under the terminology of the statute, a "levy" under (4)(B) is accomplished when the writ of execution is served on the third person, and that the duty of the third person to turn the property over to the officer is a consequence of the levy, not an essential component of the accomplishment of a "levy."

Without a single mention in the Argument portion of its brief of the levy-defining provisions of § 356a,[1] Corsair argues that the concept of a "levy" necessarily involves a seizure of the property, or at least taking possession of it. For this proposition, Corsair relies on entries in dictionaries and legal encyclopedias. Without doubt, dictionaries can play an important role in the interpretation of statutory provisions. However, when a legislature has assigned

---

[1] The only mention in Corsair's main brief of § 356a is in its quotation of the language of the writ, which references the statute.

8

consequences to actions it designates by the use of a particular term, and has specified what actions and circumstances will satisfy the statutory term, the specifications provided by the legislature can ordinarily be assumed, absent good reason, to provide better guidance on what the legislature intended than dictionary definitions.

Furthermore, it is not as if the legislature's deviations from the dictionary definition were anomalous. The legislature specified different requirements for a levy in different circumstances. In the most common circumstance of a levy, where the property is in the judgment debtor's possession, the statute does indeed require, consistent with the dictionary definitions of "levy," that the levying officer seize the property. *See* § 356a(a)(4)(A). On the other hand, in the less common circumstance of a levy, when the property is in the hands of a third person, the statute does not authorize the levying officer to seize the property from the possession of the third person, but instead places a legal obligation on the third person to deliver the property to the levying officer. *See* § 356a(a)(4)(B). The difference in treatment of the two situations makes excellent sense. In the case of property in possession of the judgment debtor, a court has already determined that the property holder is liable to the judgment creditor. Seizure of the property by the levying officer carries out what a court has already determined is appropriate. On the other hand, in the case of the judgment debtor's property in possession of a

9

third party, no court has determined that the property in fact belongs to the judgment debtor. There is sound reason not to authorize a levying officer in that circumstance to seize property from a third person absent any court's determination that the property in fact belongs to the judgment debtor.

Accordingly, it appears the Connecticut legislature created for this circumstance a less intrusive form of levy. Levying the execution legally obligates the holder of the property to deliver it to the officer, but the officer may not seize it. If the possessor of the property disputes that the property belongs to the judgment debtor, that person can go to the court that issued the writ to dispute the question, and will not be deprived of use of the property until the court makes a determination.

Corsair seeks to bolster its arguments based on the historical derivation of the levying officer's fee from "poundage" fees that were paid to sheriffs for the maintenance and safeguarding of seized property in the "pound." In past times, such property often consisted of livestock or perishable goods. Poundage fees were designed to compensate the sheriff for the expense of maintaining and safeguarding the property, as well as for incurring the risk of liability in the event of damage, spoilage, or loss. On this basis, Corsair argues that the larger fees now awarded by Connecticut for levy are justified by the onus of safeguarding the property, and not by the fact that the officer's service of court process assisted a

10

judgment creditor in recovering its due. Corsair's argument is not unreasonable. No doubt there are circumstances in which consideration of the historical evolution of a concept may properly influence a court in the interpretation of a statute. Nonetheless, as between a legislature's specification of what constitutes a "levy," and consideration of the historical reasons for compensating an officer for levying, when the two push in different directions, the words of the statute would ordinarily prevail (absent at least a showing that at the time of the enactment the statutory language meant something different from what it means today).

I find no good reason to believe that the Connecticut legislature did not intend what it wrote when it prescribed that a levy on property in the possession of the judgment debtor will involve seizure by the levying officer, but that, in the case of levy on property of the judgment debtor in the possession of a third person, the levying officer will not be authorized to seize it. Notwithstanding the consequent duty imposed on the third person upon whom levy is made to deliver the property to the levying officer, the levy is accomplished upon service of the writ.

II.     Ambiguity in § 261(a)(F).

Although I do not find ambiguity in § 261(a)(F)'s use of the phrase "for the levy of an execution," I do find a troublesome ambiguity in another provision of the same section, on a point that Corsair has not argued. The fee provision states in pertinent part:

11

The following fees shall be allowed and paid: . . . (F) for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per cent . . . .

§ 261(a)(F).

Although I believe the "levy" requirement is satisfied by the officer's service of the writ as specified by § 356a, it is unclear what must happen to satisfy the clause, "when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer." These words harbor ambiguities that might determine Pesiri's entitlement to the 15% fee. In conditionally requiring that the money be "actually collected and paid over" before the fee is earned by the officer, the statute does not specify by whom the money must be collected and paid over. Is this condition satisfied only if the money is collected and paid over by the officer seeking the fee, or, in the absence of any specification that it must be by the officer, is the condition satisfied when the money is collected and paid over, regardless of who collects it? In contrast to the clause requiring that the money be collected and paid over, the clause that immediately follows, which specifies an alternative way of satisfying this precondition to payment of the fee, reads, "or [when] the debt or a portion of the debt is secured <u>by the officer</u> . . . ." *Id.* (emphasis added). Are the underlined words, "by the officer," intended to apply only to the adjacent clause, "debt is secured," or to apply also to the preceding clause, "the money is . . . collected and paid over?" If the two alternative clauses,

12

read in combination, mean that the 15% fee does not become payable until *the officer* either collects and pays over the money, or secures the debt, that condition was arguably never satisfied here. Notwithstanding the statutory direction of § 365a(a)(4)(B) that the third party upon whom the writ is served "forthwith deliver the property or pay the amount of the debt due . . . *to the levying officer*," the district court directed National Resources to pay the judgment debtor's property into the court, and not to Marshal Pesiri. Accordingly, it was the court, and not the officer, that collected and paid over the money.

How to interpret this part of the statute is puzzling. If there had been a comma separating "is secured" from "by the officer," this would have strongly suggested a drafting intention that "by the officer" be understood to modify not only the adjacent clause, "debt is secured," but also the remote clause "money is . . . collected and paid over." *See* FOWLER'S MODERN ENGLISH USAGE 587–88 (2d ed. 1965); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013). On the other hand, in the absence of a comma, it is more difficult to guess whether the legislature intended that "by the officer" apply to both. As is generally the case, canons of construction are of little help as nearly every canon pushing in one direction is met by another pushing the opposite way.

I recognize that recently, in *Lockhart v. United States*, 136 S. Ct. 958, 962-63 (2016), the Supreme Court, in a very different context, invoked the so-called

13

"rule of the last antecedent"[2] to sustain a criminal sentence of a sex offender, concluding that a modifier listed in the criminal statute at the end of a series of alternative elements applied only to the immediately preceding alternative, and not to the alternatives previously listed. The Court, however, took pains to emphasize that use of the canon in the circumstance was "well supported by content," *id.* at 968, that reliance on a canon "can assuredly be overcome by other indicia of meaning," *id.* at 963, and that such issues are "fundamentally contextual questions," *id.* at 965.

Two contextual factors seem to push with some force against applying this canon. First, where the legislature has conditioned the officer's entitlement to the fee on either the collection and payment over of the money or the securing of the debt, I see no logical reason why the legislature would have required that the officer seeking the fee have been the person who secured the debt but not required that the officer have been the one who collected the money. Second, this question is especially pertinent in view of precedent that the poundage fees exacted by sheriffs served as compensation for the expenses and risks of safeguarding the

---

[2] Black's Law Dictionary refers to a "rule of the last antecedent" as "[a]n interpretive principle by which a court determines that qualifying words or phrases modify the words of phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing." Bryan Garner, BLACK'S LAW DICTIONARY 1532 (10th ed. 2014). The same dictionary also identifies a dueling canon, the "series-qualifier canon," as "[t]he presumption that when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositve modifier normally applies to the entire series." *Id.* at 1574.

14

property, which seems to give further logical support to interpreting an ambiguous statute as requiring the officer's involvement to justify his earning the fee. That argument, in my view, had little traction when offered by Corsair in an effort to contradict a clear statutory definition of "levy." It has more traction on this question, both because of its direct pertinence to the historical justification for the fee at issue, and because, on this question, the statute is inescapably ambiguous.

I hope the Connecticut Supreme Court will accept our certification and, in ruling on Marshal Pesiri's claim, clarify the circumstances in which an officer is entitled to the substantial fees provided by § 261(a)(F).