18-3287
*CIT Bank N.A. v. Schiffman*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Submitted: January 13, 2020        Questions Certified: January 28, 2020)

Docket No. 18-3287
_____

CIT BANK N.A.,

*Plaintiff-Counter-Defendant-Appellee,*

– v. –

PAMELA SCHIFFMAN, JERRY SCHIFFMAN,

*Defendants-Counter-Claimants-Appellants,*

JP MORGAN CHASE BANK, N.A., NEW YORK CITY PARKING VIOLATIONS BUREAU,

*Defendants.*
_____

B e f o r e:

KATZMANN, *Chief Judge*, LYNCH, *Circuit Judge*, and KAPLAN, *District Judge*.*

_____

* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

————————

Appeal from an order of the United States District Court for the Eastern District of New York (Irizarry, *C.J.*), adopting the Report and Recommendation of Magistrate Judge Robert M. Levy and granting summary judgment in favor of plaintiff-counter-defendant-appellee CIT Bank N.A. in a foreclosure action against defendants-counter-claimants-appellants Pamela and Jerry Schiffman. On appeal, the Schiffmans argue that CIT failed to prove compliance with the pre-foreclosure notice requirements of New York Real Property Actions and Proceedings Law ("RPAPL") § 1304 and the pre-foreclosure filing requirements of RPAPL § 1306. Because the Schiffmans' appeal turns on questions of New York law for which no controlling decisions of the New York Court of Appeals exist, we CERTIFY two questions to the Court of Appeals.

————————

Stephen J. Vargas, Gross Polowy, LLC, Westbury, NY, *for Plaintiff-Counter-Defendant-Appellee*.

Samuel Katz, Law Office of Samuel Katz, PLLC, Brooklyn, NY, *for Defendants-Counter-Claimants-Appellants*.

————————

KATZMANN, *Chief Judge*:

This appeal arises out of a foreclosure action that plaintiff-counter-defendant-appellee CIT Bank N.A. brought against defendants-counter-claimants-appellants Pamela and Jerry Schiffman. CIT moved for summary judgment, and the district court (Dora L. Irizarry, *C.J.*) granted the motion after adopting the Report and Recommendation of Magistrate Judge Robert M. Levy. The Schiffmans now challenge the district court's decision, arguing that CIT failed to prove

2

compliance with the pre-foreclosure notice requirements of New York Real Property Actions and Proceedings Law ("RPAPL") § 1304 and the pre-foreclosure filing requirements of RPAPL § 1306. With respect to § 1304, the Schiffmans argue that CIT failed to show that it followed standard mailing procedures to ensure that pre-foreclosure notices were properly addressed and mailed. And with respect to § 1306, the Schiffmans argue that CIT's pre-foreclosure filing with the superintendent of financial services was deficient because it did not include information about Jerry Schiffman. Because these arguments both turn on questions of state law for which no controlling decisions of the New York Court of Appeals exist, we certify two questions to the Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a).

## BACKGROUND

On March 26, 2008, Pamela Schiffman took out a loan and executed a note with IndyMac Bank, F.S.B., for the principal amount of $326,000. The note was secured by a mortgage given by Pamela Schiffman and her husband, Jerry, on their home in Brooklyn. On the same day that Pamela Schiffman executed the note, the Schiffmans both executed a Consolidation, Extension, and Modification Agreement in which they agreed to "combin[e] into one set of rights and

3

obligations all of the promises and agreements stated in the Note[] and Mortgage[]," and in which they "agree[d] to take over all of the obligations under the Note[] and Mortgage[] as consolidated and modified by this Agreement as Borrower." J.A. 48. The mortgage was subsequently assigned to OneWest Bank, F.S.B., which later became known as CIT Bank N.A. On October 30, 2014, the Schiffmans executed a Loan Modification Agreement, in which they were both listed as "Borrower," J.A. 87, which increased the balance owed to $406,481.10.

The Schiffmans failed to make mortgage payments on and after December 1, 2014, and CIT initiated a foreclosure action on October 17, 2016.[1] On February 28, 2018, CIT moved for summary judgment, and the case was referred to Magistrate Judge Levy for preparation of a Report and Recommendation. Magistrate Judge Levy issued his R&R on August 24, 2018, and he recommended that the district court grant CIT's motion, notwithstanding the Schiffmans' arguments that CIT had failed to prove compliance with the pre-foreclosure notice requirements of RPAPL § 1304 and the pre-foreclosure filing requirements of

---

[1] CIT also named JP Morgan Chase Bank, N.A. and the New York City Parking Violations Bureau as defendants. The disputes involving these parties are not at issue on appeal.

4

RPAPL § 1306. The Schiffmans renewed these arguments in their objections to the R&R, but the district court adopted the R&R in its entirety and granted summary judgment in favor of CIT in an order dated September 30, 2018, and filed October 3, 2018. The Schiffmans timely appealed, and they now raise the same arguments they raised below.

## STANDARD OF REVIEW

"We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party." *Anderson v. Recore*, 446 F.3d 324, 328 (2d Cir. 2006).[2] "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). "The nonmoving party may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.*

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

5

The Schiffmans argue that the district court erred in concluding that CIT proved compliance with the pre-foreclosure notice requirements of RPAPL § 1304 and the pre-foreclosure filing requirements of RPAPL § 1306. For the reasons below, we conclude that these issues both turn on questions of New York law for which no controlling decisions of the New York Court of Appeals exist.

## I. RPAPL § 1304

RPAPL § 1304(1) requires that, "with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower." N.Y. Real Prop. Acts. Law § 1304(1). Section 1304(2) specifies that this notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2).

"Proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *Deutsche Bank Nat.*

*Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (2d Dep't 2013). Compliance with § 1304 can be "established with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure." *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 277 (2d Dep't 2019). As the New York Court of Appeals has explained in an analogous context, proof of a standard office mailing procedure gives rise to a presumption that a notice was received, although that presumption may be rebutted by "a showing that [the] routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed." *Nassau Ins. Co. v. Murray*, 386 N.E.2d 1085, 1086 (N.Y. 1978).

In support of its motion for summary judgment, CIT included a sworn affidavit from one of its employees, Assistant Secretary Rachel Hook. As relevant here, Hook stated that:

> I have received training and have personal knowledge of CIT's standard office practice to prepare, address, mail and store letters used in its mortgage servicing business, and how to retrieve such information. . . .

7

I am familiar with CIT's standard practices and procedures used to create, mail and store data regarding the 90 day pre-foreclosure notice ("90 Day Notice") required by New York law and the notice of default required by the mortgage ("Notice of Default") that are designed to ensure that these letters are properly addressed and mailed and that data reflecting those events are stored in CIT's business records. . . .

As a standard business practice and procedure, the 90 Day Notice, a current list of at least five housing counseling agencies serving the county where the property is located, and envelopes for both certified and first-class mail are created upon default. The envelopes are addressed, from the data stored in CIT's business records, with the borrower(s)' last known address and the address of the residence that is subject to the Mortgage. The 90 Day Notices and list of housing counseling agencies are enclosed, separate from any other notice, in both the certified and first-class mail, postage prepaid envelopes. The envelopes are sealed and provided to the United States Post Office for mailing.

l hereby certify and affirm that, in accordance with CIT's standard business practice and procedures and in compliance with RPAPL § 1304, a 90 Day Notice and a current list of at least five (5) housing counseling agencies serving the county where the property is located from the most recent listing available from the Department of Financial Services were mailed to Pamela Schiffman by certified and first class mail, in an envelope separate from any other notice, to the residence that is the subject of the Mortgage . . . and Jerry Schiffman by certified and first class mail, in an envelope separate from any other notice, to the residence that is the subject of the Mortgage . . . . The 90 Day Notice was mailed on November 18, 2015 . . . . A copy of the 90 Day Notices are attached to this application.

J.A. 18–19. Along with Hook's affidavit, CIT submitted copies of § 1304 notices that were addressed to each of the Schiffmans, dated November 18, 2015, and marked as having been sent via first-class and certified mail.

The district court held that Hook's affidavit was sufficient to demonstrate compliance with § 1304, and the Schiffmans now challenge that holding in several respects. First, the Schiffmans argue, Hook "attested that the envelopes [for mailing § 1304 notices] are purportedly created upon default . . . , while the notices in this action were dated and sent a year *after* the default." Appellants' Br. 12. Second, the Schiffmans contend that Hook "failed to attest to or describe any procedure regarding when or by what process these envelopes are ever mailed." *Id.* And third, the Schiffmans assert that Hook failed to attach copies of the § 1304 notices described in her affidavit.

Regarding the latter two arguments, we conclude that the Schiffmans do not raise triable issues about CIT's compliance with § 1304. While it is true that Hook did not describe the exact process by which notices are "provided to the United States Post Office for mailing," J.A. 19, such details are unnecessary to prove compliance. *See, e.g.*, *Wells Fargo Bank, N.A. v. Heiney*, 93 N.Y.S.3d 84, 86 (2d Dep't 2019) (plaintiff demonstrated compliance with § 1304 by providing affidavit that

9

"detailed the procedures of electronically recording, printing, and dating the notices, appending a list of approved housing counseling agencies to them, placing the notices in properly addressed certified and first-class mailing envelopes, and sealing the envelopes and delivering them to the United States Postal Service for mailing"). Likewise, although the Schiffmans argue that Hook failed to attach copies of the § 1304 notices described in her affidavit, they do not dispute that such copies were included with CIT's summary judgment motion, and they offer no reason to question the authenticity of these copies.

We nevertheless hesitate to affirm the district court's judgment in light of the Schiffmans' observation that the § 1304 notices are dated November 18, 2015, whereas the Schiffmans defaulted on December 1, 2014. This nearly one-year gap is inconsistent with Hook's statement in her affidavit that CIT's § 1304 notices "are created upon default," J.A. 19, and it therefore casts doubt on whether CIT offered adequate "proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed." *Citibank*, 98 N.Y.S.3d at 277. Specifically, the untimely creation of the § 1304 notices suggests that the Schiffmans may have rebutted the presumption of receipt by "showing that [CIT's] routine office practice was not followed." *Murray*, 386 N.E.2d at 1086.

10

We recognize that the delay in creating the Schiffmans' § 1304 notices does not necessarily imply that CIT otherwise failed to follow its routine procedures for addressing and mailing notices. Indeed, CIT's delay may be explained by its acquisition of the Schiffmans' mortgage after the Schiffmans defaulted. We have been unable to find any controlling decisions from the New York Court of Appeals, however, that discuss whether the presumption of receipt is rebutted by *any* showing of a deviation from the assertedly routine office procedures for preparing and mailing § 1304 notices, or whether instead the presumption is rebutted only by a showing of deviations directly related to the mailing process, rather than to other aspects of the asserted routine. Nor have we found any decisions from the Appellate Division that indicate how the Court of Appeals would likely resolve the issue. Accordingly, we certify the following question to the Court of Appeals: *Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?*

11

## II. RPAPL § 1306

Whereas RPAPL § 1304 requires that a foreclosure plaintiff give notice to the borrower, RPAPL § 1306 requires that certain information be filed with the superintendent of financial services. Section 1306(1) provides as a precondition of a foreclosure action that a plaintiff must file "the information required by [§ 1306(2)]" within three business days of mailing a § 1304 notice. N.Y. Real Prop. Acts. Law § 1306(1). Section 1306(2), in turn, requires that "[e]ach filing delivered to the superintendent shall be on such form as the superintendent shall prescribe, and shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue." *Id.* § 1306(2). Section 1306(3) instructs the superintendent of financial services to create an electronic database for the required filings, *see id.* § 1306(3), and § 1306(4) states that the information contained in the filings "shall be used by the superintendent exclusively for the purposes of monitoring on a statewide basis the extent of foreclosure filings within this state, to perform an analysis of loan types which were the subject of a pre-foreclosure notice and

12

directing as appropriate available public and private foreclosure prevention and counseling services to borrowers at risk of foreclosure," *id.* § 1306(4).

As above, CIT relied on Hook's affidavit in support of its motion for summary judgment. In her affidavit, Hook stated that the requisite § 1306 filing was made with the superintendent of financial services within three business days of the mailing of the Schiffmans' § 1304 notices. CIT also included in support of its motion a proof of filing statement, which is dated November 18, 2015, the same date that appears on the § 1304 notices. The filing statement lists Pamela Schiffman as the borrower, but it does not list Jerry Schiffman.

Throughout this litigation, the Schiffmans have maintained that CIT failed to comply with § 1306 because the filing statement lists only Pamela Schiffman as the borrower and does not include Jerry Schiffman. Neither Magistrate Judge Levy nor the district court addressed this argument, and CIT does not respond to it on appeal. We believe that the argument warrants closer consideration, however, as § 1306(2) does not specify whether filings must include information about all borrowers on a given loan, or whether it is sufficient to include information about only one borrower.

A review of New York case law does not resolve the matter. Although New York courts have held that § 1304 requires strict compliance with respect to all borrowers on a loan, *see, e.g.*, *Aurora Loan Servs., LLC v. Weisblum*, 923 N.Y.S.2d 609, 616 (2d Dep't 2011), we have found no decisions from the New York Court of Appeals or the Appellate Division that address whether § 1306 imposes an analogous obligation.

On the one hand, it seems logical to assume that §§ 1304 and 1306 have similar requirements, as the two provisions operate in tandem, with the mailing of a § 1304 notice triggering the deadline to make a § 1306 filing. Moreover, the two provisions appear to have as shared purposes the protection of homeowners and the prevention of foreclosures. *See Weisblum*, 923 N.Y.S.2d at 617 (stating that § 1304's "manifest purpose is to aid the homeowner in an attempt to avoid [foreclosure] litigation"); *TD Bank, N.A v. Oz Leroy*, 995 N.Y.S.2d 625, 628 (3d Dep't 2014) (describing § 1306's purpose of "reduc[ing] the number of preventable foreclosures" by "identify[ing] distressed homeowners as soon as possible"). Given this overlap, it is plausible that both provisions require compliance with respect to all borrowers on a single loan.

On the other hand, there is some evidence that §§ 1304 and 1306 differ in relevant respects. Indeed, while the Court of Appeals and Appellate Division seem not to have addressed the question, a Justice of the New York Supreme Court, in a pair of decisions issued after the district court's ruling in this case, has held that § 1306 does not require compliance with respect to all borrowers on a loan because § 1306, unlike § 1304, was intended "only to be a source of statistics for the state," such that "filing for either [borrower] would provide the state with the same statistical information it needed." *Bank of N.Y. Mellon v. Vasquez*, 63 Misc. 3d 1220(A), 2019 WL 1891326, at *4 (N.Y. Sup. Ct. 2019) (unreported disposition); *see HSBC Bank USA, N.A. v. Ahmad*, 62 Misc. 3d 1225(A), 2019 WL 1087863, at *6–7 (N.Y. Sup. Ct. 2019) (unreported disposition). Relatedly, the superintendent of financial services, who is charged under § 1306(2) with prescribing the form of the filing statement and has authority under § 1306(5) "to promulgate such rules and regulations as shall be necessary to implement the purposes of" § 1306, N.Y. Real Prop. Acts. Law § 1306(5), has declined to interpret the provision as requiring compliance with respect to all borrowers on a loan.[3] Instead, the superintendent

---

[3] The Department of Financial Services website explains that:

has prescribed a filing form that provides for a maximum of two borrowers, even if there are more borrowers on a loan.

Given these conflicting considerations and the lack of guidance from either the Court of Appeals or the Appellate Division, we certify the following question to the Court of Appeals: *Where there are multiple borrowers on a single loan, does*

---

> The [RPAPL § 1306] form requests information about a particular home loan. Consequently, if there are multiple borrowers on a single loan, the lender or servicer should not report them on multiple forms.
>
> We recognize that RPAPL § 1306 requires the reporting of the name of "the Borrower". It does not specifically anticipate multiple borrowers. The purpose of the borrower information on the [RPAPL § 1306] Form is to assist mortgage counselors working with the Department to contact the Borrower. When we developed the electronic reporting form for bulk filings, we did not provide for reporting more than two Borrowers. The Department's assumption in preparing the [RPAPL § 1306] form was that, if a single 1-to-4 family residence is the principal dwelling of multiple borrowers, (1) they have the same interest in seeking counseling to avoid foreclosure, and (2) even if their interests differ, it is difficult for New York to allocate resources to more than one borrower in a household. Consequently, we do not believe RPAPL § 1306 should be interpreted as requiring the reporting of more than two Borrowers on the bulk reporting form.

Pre-foreclosure Information Form FAQs, N.Y. St. Dep't Fin. Servs., https://on.ny.gov/3753YPA.

16

*RPAPL § 1306 require that a lender's filing include information about all borrowers, or does § 1306 require only that a lender's filing include information about one borrower?[4]*

### III.  Certification

"Although the parties did not request certification, we are empowered to seek certification nostra sponte." *Corsair Special Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 182–83 (2d Cir. 2017). Pursuant to the rules of the New York Court of Appeals, "[w]henever it appears to . . . any United States Court of Appeals . . . that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a); *see also* 2d Cir. R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court.").

---

[4] In certifying this question, we have assumed that Jerry Schiffman is a "borrower" within the meaning of RPAPL § 1306. We have made this assumption, notwithstanding the fact that only Pamela Schiffman executed the note with IndyMac Bank, F.S.B., because both Jerry and Pamela Schiffman executed, and are listed as borrowers in, the Consolidation, Extension, and Modification Agreement, and the Loan Modification Agreement. If the Court of Appeals determines that Jerry Schiffman is not in fact a "borrower" within the meaning of RPAPL § 1306 because of his failure to execute the note with IndyMac Bank, F.S.B., then this certified question will become moot.

Our decision to certify questions to the Court of Appeals is discretionary, and when exercising that discretion we consider whether: (1) "the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it"; (2) "the statute's plain language does not indicate the answer"; (3) "a decision on the merits requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make"; and (4) "the questions certified will control the outcome of the case." *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). Each of those factors weighs in favor of certification in this case.

First, as discussed above, the Court of Appeals has not decided the specific questions of New York law raised here, and similar questions have not "been litigated in New York courts often enough that sufficient precedents exist for use to make a determination concerning their proper outcome." *CFTC v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010). Second, the plain language of RPAPL §§ 1304 and 1306 does not directly speak to the questions at issue. Third, both questions turn on policy determinations that the Court of Appeals is best suited to make, including the balancing of lenders' and borrowers' interests, and the relative importance of

18

the state's ability to collect and analyze foreclosure data. And fourth, the answers to the questions will determine whether CIT demonstrated compliance with §§ 1304 and 1306, thereby resolving this appeal. Because these factors weigh in favor of certification, we certify the questions formulated above and restated below.

CONCLUSION

For the reasons stated, the Court hereby certifies the following questions to the New York Court of Appeals:

(1)    Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?

(2)    Where there are multiple borrowers on a single loan, does RPAPL § 1306 require that a lender's filing include information about all borrowers, or does § 1306 require only that a lender's filing include information about one borrower?

19

We invite the Court of Appeals to reformulate these questions as it sees fit or expand them to address any other issues of New York law that would assist this Court in determining whether CIT demonstrated compliance with §§ 1304 and 1306.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of briefs, appendices, and the record filed in this case by the parties. This panel retains jurisdiction for purposes of resolving this appeal once the New York Court of Appeals has responded to our certification.

## Certificate

The foregoing is hereby certified to the New York Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a), as ordered by the United States Court of Appeals for the Second Circuit.